The plaintiff, Buehl B. Buchanan, appeals from a summary judgment in favor of Merger Enterprises, Inc., doing business as the Checkers Lounge. The issue in this case is whether the personal representative of an individual killed by a drunken driver should be allowed to bring an action against a lounge which continued to serve alcohol to a patron after he had become visibly intoxicated, when the lounge's employees knew or should have known that the patron would later attempt to drive an automobile.
The plaintiff alleges that at or about 5:30 in the morning of July 29, 1981, David Slaughter entered the Checkers Lounge in Dothan after an all-night drive from Florida. He commenced drinking and continued imbibing until around noon, when he left with a waitress. Thirty minutes later he returned and remained at the lounge until around 5:00 P.M. Although Slaughter became visibly intoxicated while in the lounge, the lounge's employees continued to serve him alcoholic beverages up until the time he left. About fifteen minutes after leaving the lounge, the automobile which Slaughter was driving left the road and careened through the yard of the plaintiff's mother, killing her as she worked in her garden.
Alabama's dram shop statute creates a civil action against a purveyor of alcoholic beverages in favor of any person, or the personal representative of any person, injured or killed by an intoxicated person when the beverages causing the intoxication were dispensed "contrary to the provisions of law." Section6-5-71, Code of Alabama 1975. Prior to 1980, Title 28, Chapter 3, of the Code, §§ 28-3-1 et seq., governed the sale of alcoholic beverages in "wet" counties. That chapter contained an article, Article 9, enumerating miscellaneous offenses connected with the sale and distribution of alcohol. Sales in violation of that article were considered to be sales contrary to law within the meaning of the dram shop statute. Section28-3-260 (2) provided that it was unlawful for a liquor licensee "to sell, furnish or give any beverages to any person visibly intoxicated or to any insane person or to any minor or to habitual drunkards or to persons of known intemperate habits." Thus, where a tavern served liquor to a visibly intoxicated patron in contravention of § 28-3-260, a person *Page 123 
injured by the patron had a cause of action against the tavern under the dram shop statute.
In 1980 the legislature enacted a new Alcoholic Beverage Licensing Code, Act No. 80-529. The new licensing code replaced Article 9 of old Title 28. The new code did not, however, have any provisions similar to § 28-3-260 enumerating offenses associated with the sale of alcohol. The defendant contends that the framers of the new licensing code sought to bestow greater authority on the Alcoholic Beverage Control Board to promulgate rules governing the sale of alcohol. Section28-3-49, Code of Alabama 1975, gives the Board the power to promulgate rules and regulations having the full force and effect of law regarding the sale of alcoholic beverages. The A.B.C. Board did promulgate regulations prohibiting the sale of alcohol to persons "acting in a manner as to appear to be intoxicated." Regulation 20-X-6-.02. That regulation was not promulgated until September of 1982, which, of course, was after Mrs. Buchanan's death.
The defendant argues that because Mrs. Buchanan's death occurred subsequent to the repeal of § 28-3-260 and prior to the promulgation of § 20-X-6-.02, there was no sale contrary to law and, hence, that no cause of action arose under the dram shop statute. The defendant argues that the legislature is the proper body of government to determine the public policy of this state regarding the scope of liquor vendor liability laws and that it has limited the scope of those liquor liability laws in such a way that there is no cause of action against the defendant under these facts.
We agree with the defendant to the extent that it appears that on the date in question there was no statute in effect making it illegal to sell alcohol to visibly intoxicated persons. We disagree, however, with the defendant's characterization of this plaintiff as a single "unfortunate" individual seeking to carve out a special exception to the usual rules of liquor vendor liability in Alabama. From 1909, when the dram shop statute was first passed, until the present time, with the sole exception of the short hiatus during which the events complained of in this case took place, Alabama has recognized a cause of action under the dram shop statute for injury or death caused by an intoxicated individual where the intoxicated person was sold alcohol in the manner alleged in this case. It is not the plaintiff who seeks to carve out a special exception. It is the defendant, who has been accused of culpable behavior, who seeks to escape liability solely because of the fortuitous timing of the events.
Moreover, it appears to us that the emasculation of the dram shop statute by the passage of the new alcohol licensing act was the result of legislative oversight, not legislative wisdom. The legislature may have intended for the A.B.C. Board to promulgate regulations governing the sale of alcohol. It does not follow from that premise, however, that it intended to legalize the sale of alcohol to visibly intoxicated persons, to minors, and to insane persons. To the contrary, it appears to us that the legislature was very concerned with the problem of drunken driving. In the same term during which the new alcohol licensing act was passed, the legislature passed a new drunk driving law, Act. No. 80-434, granting trial courts new powers to suspend driving licenses of those convicted of drunk driving upon their first conviction and providing for increased penalties and a mandatory suspension of driving privileges for second and subsequent convictions. Compare § 32-5A-191 to §32-5-170, Code of Alabama 1975. The stated purpose of the new drunk driving laws was to "do a better job of helping to identify the problem drinking driver and keep him off the highways." Commentary to § 32-5A-191. Unless the legislature was afflicted with a collective split personality, it is difficult to believe that it intended to give taverns carte blanche authority to continue serving alcohol to visibly intoxicated patrons, given its concern for drunken driving. If it had intended to do away with the dram shop *Page 124 
statute the legislature would have repealed the statute itself, not just its teeth.
The complexity and interrelationship of statutory laws are such that the repeal of one statute can have unexpected consequences, as it did here with the dram shop statute. A similar problem was created with the passage of the new drunk driving statute in 1980. Driving under the influence of alcohol is a misdemeanor under Alabama law. See § 13A-1-2 (3). The Alabama statute authorizing warrantless arrests allows police officers to make warrantless arrests for the violation of a misdemeanor when the offense is committed within the officer's presence. Section 15-10-3 (1), Code of Alabama. When an officer has observed a drunken driver violating traffic laws the officer can arrest the driver, since the offense was committed in the officer's presence. If, however, the drunk driver was involved in a traffic accident and the officer arrived at the scene of the accident after it had occurred, the offense would not have been committed in the officer's presence and, therefore, the officer would not be authorized under § 15-10-3
to make an arrest. Obtaining a warrant is impractical, since the length of time it takes to do so would usually be such that, by the time the arrest is made the blood alcohol level of the suspect would have diminished and the results of the post-arrest tests administered to determine the driver's blood alcohol content would not reflect the driver's state of intoxication at the time of the accident. Therefore, the legislature passed an act empowering police officers to make warrantless arrests at the scene of an accident for the violation of § 32-5-170, the old drunk driving law. Acts 1971, No. 1942, codified at § 32-5-171. When the legislature passed the new drunk driving law in 1980 it did not amend § 32-5-171
to reflect passage of the new act. Since § 32-5-170 had been repealed, the new drunk driving law in effect rendered useless the statute empowering police to arrest drunk drivers who had been involved in an accident. An argument could be made to the effect that, by passage of the new drunk driving law, the legislature "intended" to strip police of the right to arrest drunk drivers who were involved in traffic accidents. As a practical matter, such an argument simply is not plausible. Just as the emasculation of the dram shop statute was inadvertent, so was the emasculation of the statute allowing police to arrest drunk drivers who have been involved in accidents. The legislature subsequently amended § 32-5-171 to correct the mistake, see Acts 1983, 2d Ex.Sess., No. 83-201, just as the A.B.C. Board resurrected the dram shop statute by passage of a new regulation prohibiting sales of liquor to visibly intoxicated persons.
Thus, we are faced with an anomalous situation. It is the legislatively declared policy of this state to discourage drunken driving. Even the defendant concedes in its brief that there is a "universal concern" for the problem. Yet, during the same term that the legislature passed new, more stringent, drunk driving laws, it inadvertently removed the statutory prohibition against selling further intoxicants to visibly intoxicated tavern patrons, thus destroying the dram shop statute and encouraging drunk driving. We cannot, of course, rewrite the dram shop statute. It exists, regardless of intent, as written. It is proper, however, for us to consider allowing the plaintiff to proceed under a negligence theory. Tort law issues are, under certain circumstances, proper subjects for judicial reform. Lloyd v. Service Corp. of Alabama,453 So.2d 735 (Ala. 1984). We find precedent for the proposition that legislatively created principles of dram shop liability, not fully implemented by the acts themselves, can be effectuated by a common law negligence action in the case of Waynick v.Chicago's Last Department Store, 269 F.2d 322 (7th Cir. 1959). In that case a visibly intoxicated driver purchased alcohol from the defendant in Illinois and subsequently was involved in an automobile accident with the plaintiff in Michigan. Both states had dram shop statutes creating causes of action against a seller of alcohol to a visibly intoxicated person. The Michigan act, however, did *Page 125 
not apply to sales outside Michigan and the Illinois act did not apply where the injuries were incurred outside Illinois. The court rejected the same argument made by the defendant here, viz., that the dram shop statutes "preempted the field." That court concluded that the acts avoided, rather than preempted the field, and that a common law negligence action should be allowed under those facts. 269 F.2d at 324-26.
At common law no action would lie for negligently dispensing alcohol. The common law rule was enunciated in Alabama in Kingv. Henkie, 80 Ala. 505 (1876). In that case the deceased, who was in a state of intoxication, entered a saloon, where he consumed large quantities of alcohol and then died on the premises. An action was brought, not by an innocent third-party, but by the representative of the person who had been served the alcohol. This court ruled that the action would be barred by the contributory negligence of the deceased. It also reiterated the common law rule that no cause of action existed for the negligent dispensing of alcohol. The court reasoned that "[t]he death of the deceased was not `caused' so much by the wrongful act of the defendants in selling him the whiskey, as by his own act in drinking it after being sold to him." 80 Ala. at 510. Although King did not involve an action brought by a third-party, this Court relied on it in a case brought by a third-party against the employer of a drunken driver who injured the plaintiff in a traffic accident. DeLoachv. Mayer Electric Supply Co., 378 So.2d 733 (Ala. 1979). Mayer Electric hosted an "open house and `New Products Show'" at which it served food and drinks. The employee/driver in that case, along with the rest of Mayer Electric's employees, was invited to attend the show, though he and the other employees "clocked out" before attending. The plaintiff's complaint in that case was held not to state a cause of action against Mayer Electric under the dram shop statute, because that defendant had not sold the alcohol to the employee/driver. This Court refused to recognize a common law negligence action against Mayer Electric under those facts.
The threshold issue in determining whether a common law negligence action will lie is to determine whether the defendant owed a duty to a class of persons which included the deceased. The duty issue is essentially a public policy question, i.e., whether the law should impose a requirement on the defendant that it do or refrain from doing some act for the safety and well-being of the plaintiff. See Prosser, Handbookof The Law of Torts § 206 (4th ed. 1971). During King's day, when most people walked and some rode in horse-drawn carriages, no unreasonable risk to third persons was created by selling alcohol to a visibly intoxicated person. Today, lounge patrons no longer typically walk or rely on horses to travel to and from taverns. They almost always travel by motor vehicle. This reality of modern life is evidenced by the fact that drinking establishments, unless they are located in buildings constructed prior to the proliferation of the automobile, typically provide parking lots nearby for their patrons. Today, motor vehicle crashes are the single greatest health hazard to people under the age of 45. Over 50% of all highway fatalities result from driving under the influence of alcohol. During the past ten years over 250,000 people have died in the United States in alcohol-related motor vehicle accidents. InterimReport to the Nation From The Presidential Commission on DrunkDriving, p. i and p. 2 (Dec. 13, 1982).
The law has also undergone significant changes since King was rendered. The law of negligence, which was scarcely recognized as a separate tort in its own right before the nineteenth century, was in its infancy when King was decided. Since that time, ideas regarding the liability of vendors for injuries resulting from the sales of dangerous products have undergone substantial revision. At the time King was decided, the seller of a product was generally not liable to third persons *Page 126 
for negligence with regard to the sale of products, due to the privity requirement. See, e.g., Sterchi Bros. Stores v.Castleberry, 236 Ala. 349, 182 So. 474-76 (1938). Today, there is no requirement of privity between the seller and the injured party in order for an action to lie. See, e.g., Harris v. Boardof Water and Sewer Commissioners of the City of Mobile,294 Ala. 606, 320 So.2d 624 (1975).
The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised. Havard v. Palmer Baker Engineers, Inc.,293 Ala. 301, 307, 302 So.2d 228, 232 (1974). Common experience dictates that when a person is imbibing alcoholic beverages that person reaches a level of toxicity after which continued imbibing will render him unable to operate an automobile safely. The plaintiff alleges that the defendant served Slaughter alcoholic beverages continuously from 5:30 in the morning until 5:00 that evening, except for thirty minutes in the middle of the day. It is reasonable to conclude that at some point during that day the defendant's employees should have foreseen that Slaughter was becoming so intoxicated that to continue serving him alcohol would create an unreasonable risk of harm to third persons.
The defendant's negligence need not be the sole cause of an injury in order for an action against the defendant to lie. It is sufficient that the negligence concurred with other causes to produce the injury. Lawson v. General Telephone Co. ofAlabama, 289 Ala. 283, 290, 267 So.2d 132, 138 (1972). In situations such as the one at bar, where liquor is sold under a license for on-premises consumption to one who the seller knows or should know will later attempt to drive, if courts cling steadfastly to the myth that the continued selling of alcohol to a visibly intoxicated patron cannot be the proximate cause of a third person's injuries, they are wearing blinders when it comes to observing the ordinary course of events. McClellan v.Tottenhoff, 666 P.2d 408, 415 (Wyo. 1983).
 "The modern view, and probably the majority view, in cases involving a liquor vendor's liability to third persons is that the furnishing of intoxicants may be the proximate cause of the injuries."
Vance v. United States, 355 F. Supp. 756, 761 (D.Alaska 1973).
As numerous courts have pointed out, there is an obvious analogy between the negligent sale of alcohol to a visibly intoxicated person and the tort of negligent entrustment. See, e.g., Ontiveros v. Borak, 136 Ariz. 500, 667 P.2d 200, 209
(1983); Hutchens v. Hankins, 63 N.C. App. 1, 303 S.E.2d 584, 597
(1983); Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1, 7
(1959); Elder v. Fisher, 247 Ind. 598, 217 N.E.2d 847, 852
(1966); Mitchell v. Ketner, 54 Tenn. App. 656, 393 S.W.2d 755,759 (1964). If the defendant had entrusted Slaughter with an automobile when he was visibly intoxicated, the plaintiff would have had a cause of action against the defendant. Redmond v.Self, 265 Ala. 155, 90 So.2d 238 (1956); Restatement of Torts,(Second) § 390 (specifically adopted as declarative of the law in Alabama in Keller v. Kiedinger, 389 So.2d 129 (Ala. 1980)); see Comment, Negligent Entrustment in Alabama, 23 Ala.L.Rev. 733 (1971). The facts of this case merely represent the converse situation. Justice Musmanno likened the sale of alcohol to an intoxicated individual to the sale of a firearm to a known incompetent:
 "The person who would put into the hands of an obviously demented individual a firearm with which he shot an innocent third person would be amenable in damages to that third person for unlawful negligence. An intoxicated person behind the wheel of an automobile can be as dangerous as an insane person with a firearm. He is as much a hazard to the safety of the community as a stick of dynamite that must be de-fused in order to be rendered harmless. To serve an intoxicated person more liquor is to light the fuse."
Jardine v. Upper Darby Lodge, 413 Pa. 626, 198 A.2d 550, 553
(1964). *Page 127 
The recognition of a cause of action for the negligent sale of alcohol by a licensee for on-premises consumption to one who is visibly intoxicated will discourage drunk driving by discouraging the sale of alcohol to patrons who lack the self control to cease drinking when they have "had enough." The Presidential Commission on Drunk Driving concluded that the majority of alcohol-related deaths are caused by "heavy (problem) drinkers" who regularly abuse alcohol. InterimReport, supra, at page 2. Although some of these problem drinkers are arrested before they cause accidents, the Commission estimates that only one in 500 to one in 2000 drivers on the road who are legally intoxicated are arrested for driving under the influence. Id. Common experience tells us that after a "problem drinker" begins to imbibe, his self-restraint is often insufficient to cause him to stop before he becomes unable to drive safely. To put it bluntly, if we must depend on the David Slaughters of this world to exercise the self-restraint to stay off the road after they have had "a few too many," our society will never be able to rid itself of the pernicious menace of drunken drivers. In a situation like the one at bar, the first step toward detoxicating someone who has lost control over his reflexes and judgment, and has lost his sense of responsibility toward others because of alcohol, is to stop selling him liquor. The question whether the employees of the Checkers Lounge acted unreasonably in failing to stop pouring Slaughter drinks at some point during the day is one which should be presented to a jury.
We recognize that the rule that there could be no common law cause of action for negligently serving alcohol, which was espoused in King, was reaffirmed in DeLoach, supra. DeLoach is, however, distinguishable from the facts presented here. It did not involve a licensed vendor. Had these facts been alleged inDeLoach, a cause of action would have been stated under the dram shop statute. Furthermore, there has been an increase in the public's awareness of the drunken driving problem sinceDeLoach was decided. The change in public attitudes has been reflected in legislative efforts to reduce the incidence of drunken driving in this state.
The rule espoused in King was judicially created. When a judicially created rule becomes outmoded or unjust in its application, it is often appropriate for the judiciary to modify it. Lloyd v. Service Corp. of Alabama, supra.
 "Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others "`long dead and unaware of the problems of the age in which he lives, do his thinking for him.'"
Lewis v. Wolf, 122 Ariz. 567 at 568, 596 P.2d 705, 706 (1979) (quoting Mr. Justice Douglas, Stare Decisis, 49 Colum.L.Rev. 735, 736 (1949)).
Numerous other states have recently considered the question presented here and have recognized common law negligence actions under similar facts. See, e.g., Ontiveros v. Borak,136 Ariz. 500, 667 P.2d 200 (1983); Kelly v. Gwinnell, 96 N.J. 538,476 A.2d 1219 (1984); Hutchens v. Hankins, 63 N.C. App. 1,303 S.E.2d 584 (1983); Sorensen v. Jarvis, 119 Wis.2d 627,350 N.W.2d 108 (1984); McClellan v. Tottenhoff, 666 P.2d 408 (Wyo. 1983).
Finally, the defendant argues that the recognition of a common law action for negligently dispensing alcohol would allow actions to be brought against social hosts. That result does not necessarily follow. Most of the states which have recognized a common law action for negligently dispensing alcohol have restricted those actions to instances of sales by vendors. Only New Jersey, in Kelly v. Gwinnell, supra, has extended liability to social hosts. There is an arguable distinction between licensed *Page 128 
vendors and social hosts based on the governmental interest which supports the statutory requirement that commercial vendors of alcohol be licensed. An analogy to that position may be found in products liability law. The rule stated in § 402A of the Restatement of Torts (Second) does not apply for instance to a "housewife who, on one occasion, sells her neighbor a jar of jam or a pound of sugar." Comment f to § 402A. We hasten to point out, however, that the question of a social host's liability is not before us and we specifically decline to decide that issue. We cannot allow the possibility that this court might, some time in the future, recognize a negligence action involving a social host's dispensing of alcohol, to prevent us from allowing this plaintiff to have his day in court. The gravity of the injuries and the interests of society outweigh the potential for harm caused by the possibility that we might affect someone's cocktail party customs.
The decision of the trial court is hereby reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED.
JONES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX, ALMON and SHORES, JJ., dissent.