The question presented by this appeal is whether a person injured by an intoxicated person, to whom alcoholic beverages have been sold contrary to the provisions of law, has a claim either under Alabama's Dram Shop Act (Code of 1975, § 6-5-71), or for common law negligence, or under the doctrine of premises liability. The trial court granted summary judgment in favor of the licensee as to all claims. We hold that the plaintiff stated a claim under the provisions of Alabama's Dram Shop Act; therefore, we reverse and remand as to that claim, but we affirm as to the other two claims.
At the time of the incident in question, plaintiff Ward was a 24-year-old officer in the United States Marine Corps. While on leave in Tuscaloosa, he and two brothers visited a restaurant, where he consumed one bottle of beer with dinner. Subsequently, before 1:00 a.m., the three of them went to a local lounge, The Brass Monkey, which was owned by defendant Rhodes, Hammonds, and Beck, Inc. At approximately 1:00 a.m., Marvin Rex Shotts, Jr., another lounge patron, struck Ward in the left eye. Ward was treated without hospitalization. Subsequently, Ward brought this action against Shotts; Rhodes, Hammonds, and Beck, Inc.; Charles D. Rhodes, James Harry Hammonds, and Henry Wyman Beck, both individually and as stockholders of the corporate defendant; and several fictitious parties.
Ward's complaint contained several counts. As against the corporation, Ward alleged in Count Three that its employees served alcoholic beverages to Shotts while he was in an intoxicated condition, and that while Shotts was in that condition, he assaulted Ward, to Ward's injury. Ward also alleged that the corporation was thus in violation of the Dram Shop Act, Code 1975, § 6-5-71.
In Count Four, Ward alleged that the corporation, through its employees, "willfully, negligently, and wantonly" served alcoholic beverages to Shotts while Shotts was intoxicated, and that while intoxicated Shotts "intentionally, wantonly and maliciously" assaulted Ward, to Ward's injury.
In Count Five, plaintiff charged that the corporation and its employees "had actual or constructive knowledge or could have reasonably foreseen" that Shotts was of violent habit or that when intoxicated he was likely to commit violent acts. Despite this knowledge, he alleged, the corporation's employees "willfully, negligently and wantonly" served intoxicating beverages to Shotts and, as a proximate result, plaintiff Ward was injured.
Count Six alleged that Ward was a business invitee of the corporation and that the corporation owed him a duty to maintain reasonably safe premises, which duty it *Page 161 
negligently and/or wantonly breached; and that that breach proximately caused injury to plaintiff Ward.
Following an answer by the defendants and the answering of interrogatories filed by both sides, the corporation, and Rhodes, Hammonds, and Beck, individually and as stockholders, moved for summary judgment based upon the pleadings, the answers to interrogatories, and the affidavits of Rhodes and Loribeth Hirsberg. The moving parties and the opposing party filed memoranda pertaining to summary judgment. Plaintiff also filed the affidavit of Vincent Paul Ward in opposition to these defendants' motion. Apparently this affidavit was filed on the day the hearing was held on defendants' motion, i.e., March 26, 1986. Following that hearing, the trial court granted summary judgment in favor of the corporation and Rhodes, Hammonds, and Beck, individually and as stockholders. The trial court entered a proper Rule 54(b), Ala.R.Civ.P., certification of finality and this appeal ensued.
Plaintiff does not argue on appeal that summary judgment was improper as to Rhodes, Hammonds, and Beck, individually and as stockholders. Accordingly, our review reaches only the propriety of the trial court's order with regard to Rhodes, Hammonds, and Beck, Inc.
 I.
The pertinent part of Code of 1975, § 6-5-71, states:
 "(a) Every wife, child, parent or other person
who shall be injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling, giving or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages.
 "(b) Upon the death of any party, the action or right of action will survive to or against his executor or administrator.
 "(c) The party injured, or his legal representative, may commence a joint or separate action against the person intoxicated or the person who furnished the liquor, and all such claims shall be by civil action in any court having jurisdiction thereof. (Acts 1909, No. 191, p. 63; Code 1923, § 5674, 5675; Code 1940, T. 7, § 121, 122.)" (Emphasis added.)
The original legislative Act which granted a right of action to a person who was injured in consequence of the illegal sale or disposition of intoxicating liquor or beverages was adopted by the legislature in 1909. This Court, commenting on the intent and purpose of the 1909 Act in Webb v. French, 228 Ala. 43,44, 45, 152 So. 215 (1934), stated the following:
 "This act, one of the companion prohibition bills of that special session, covers more than thirty pages, and broadly speaking, may be deemed a prohibition enforcement measure.
 "The construction of section 8, divided into two sections in the Code, is not free from difficulty. The first portion, now section 5674 of the Code, creates a cause of action against the bootlegger (to use a modern term) for personal injuries to third persons at the hands of one to whom the bootlegger has furnished prohibited liquor and the injury is the proximate consequence of intoxication from such liquor.
 "It would seem the right of action runs in favor of two classes of persons:
"(1) The person injured in person or property.
 "(2) Wife, child, parent, or other person (a dependent maybe) who has been injured through loss of means of support because of personal injury to the person furnishing the means of support." (Emphasis added.)
The difficulty in the interpretation of § 6-5-71 arises out of the first words of the section — "Every wife, child, parentor other person." (Emphasis added.) However, under the separate constructions given to the language in § 6-5-71, "other person
who shall be injured in person . . . *Page 162 
by any intoxicated person," in this Court's plurality decision in Maples v. Chinese Palace, Inc., 389 So.2d 120 (Ala. 1980), the "injured person," the plaintiff in this case, falls within the class of persons to whom the legislature intended to give a cause of action by the enactment of the Dram Shop Act.
In Maples, supra, four Justices concluded that:
 "The words, 'every wife, child, parent,' in § 6-5-71 denote relationship to the person to whom the intoxicating liquors were sold."
(Emphasis added.) 389 So.2d at 124. In further concluding that "other person" did not include the intoxicated person,[1] those Justices approved
 "the construction which Judge Cooley gave to the words 'other persons' in Brooks v. Cook, 44 Mich. 617, 7 N.W. 216 (1880):
 " 'But 'tis a sensible and well understood rule of construction that when after an enumeration, the statute employs some general term to embrace other cases, the other cases must be understood to be cases of the same general character, sort or kind with those named. . . .'
 "Apply this rule here, and the party intoxicated is excluded. The persons enumerated are persons who stand to him in special relations, and it is therefore to be assumed that 'any other person' who may sue must also stand to him in some special relation so as to be injured by his intoxication or by the sale, etc., to him."
(Emphasis added.) Id. But the complete quotation from JudgeCooley's opinion in Brooks v. Cook, supra, was not included inthe Maples opinion. A further reading of Brooks reveals that Cooley's construction of the class of persons intended by the term "other person" would, indeed, include the plaintiff in this case, who was allegedly directly injured in person by the intoxicated person:
 "So far as the statute attempts any enumeration of persons who may sue, they all stand in some one of the domestic relations to the person to whom the liquor is sold, given or furnished. To that extent the statute unquestionably contemplates that there shall be three persons concerned: the person selling, giving, or furnishing, the person receiving and causing an injury, and the person injured. But there might be other cases equally meritorious with these, (see English v. Beard, 51 Ind. 489; Bodge v. Hughes, 53 N.H. 614;) and therefore after enumerating wife, child, parent, guardian and husband, the statute extends the right of action to other persons injured.
 ". . . The persons enumerated are persons who stand to [the party intoxicated] in special relations, and it is therefore to be assumed that 'any other person' who may sue must also stand to him in some special relation so as to be injured by his intoxication or by the sale, etc., to him. A creditor might perhaps stand in that relation under some circumstances, or a contractor, or servant, or the master of a vessel, or a traveler passing him in the street, and so on. But he could not stand in any such relation to himself, and therefore cannot be understood as embraced in the terms, 'wife, child, parent, guardian, husband or other person,' injured in person, property or means of support by himself, or by reason of his intoxication or by the sale, etc., of intoxicating drinks to himself. The statute evidently contemplates three parties — seller, receiver and injured party — in all *Page 163 
cases." (Emphasis added.) 7 N.W. at 217.
In his concurrence in part and dissent in part in Maples,supra, Justice Jones, joined by Justices Shores and Beatty, offered a construction of the Dram Shop Act as to the classes of persons intended to be given a cause of action thereunder. That construction would also put the plaintiff in this case within the class of claimants designated in the act as "other persons":
 "The difficulty of interpretation posed by § 6-5-71(a) is encountered in its very first words — 'Every wife, child, parent or other person. . . .' __________ Obviously, wife, child, and parent are words of relationship. Query: Relationship to whom? I think the answer, necessarily, is the wife, child, or parent of the intoxicated person or of the party injured in person by the intoxicated person. The first class of protected persons, then, is the wife, child, or parent of the intoxicant or of the personally injured party for loss in means of support. The phrase, 'or other person,' constitutes the second class of claimants, i.e., anyone who is injured in person or property by the intoxicated party. See Webb v. French, 228 Ala. 43, 152 So. 215 (1934).
". . .
 "The second class of potential plaintiffs (embraced within the phrase 'or other person') is the person directly injured 'by any intoxicated person or in consequence of the intoxication of any person'; and this right of action is for injury 'in person [or] property.' Included within this second class, of course, is the wife, child, or parent who is injured in person or property by a drunken husband, parent, or child; and in this event the relationship of the claimant to the intoxicated person is purely coincidental."
(Footnotes omitted.) (Emphasis added.) 389 So.2d at 126-27. This construction of "other persons" comports with that given by Judge Cooley in Brooks v. Cook, supra, which, as explained above, was expressly adopted by four Justices in Maples, supra.
In his opinion in Brooks v. Cook, supra, decided over 100 years ago, Judge Cooley concluded that by its enumeration in the act of "wife, child, parent, guardian, [and] husband," the Michigan legislature intended this class of potential plaintiffs to "stand in some one of the domestic relations tothe person to whom the liquor is sold, given or furnished." (Emphasis added.) 7 N.W. at 217. He also concluded that "any other person, who shall be injured in person or property" might well include a creditor, contractor or servant of an intoxicated person, or "the master of a vessel, or a traveler passing him [the intoxicated person] in the street, and so on."Id.
What did the Alabama legislature intend by its enumeration of "wife, child, [and] parent" in the predecessor to § 6-5-71(a)? Significant to our ascertaining this legislative intent is the language of subsection (c) of § 6-5-71, which was contained in the original Dram Shop Act of 1909:
 "The party injured, [i.e., those identified in subsection (a)] or his legal representative, may commence a joint or separate action against the person intoxicated or the person who furnished the liquor and all such claims shall be by civil action in any court having jurisdiction thereof."
(Emphasis added.) When the Dram Shop Act was enacted, the common-law rule of intra-family tort immunity still prevailed in Alabama. It was not until 1917 that this Court abolished husband-wife tort immunity by construing statutes enacted in 1907 giving the wife separate property rights. Johnson v.Johnson, 201 Ala. 41, 77 So. 335 (1917). The common law rule of tort immunity still prevails in Alabama as between parent and child. See Hill v. Giordano, 447 So.2d 164 (Ala. 1984).
Thus, in 1909, the common law rule of intra-family immunity would have precluded the spouses, parents, and children of theintoxicated person from bringing an action against theintoxicated person. In other words, if the "wife, child, [and] parent" referred to in § 6-5-71(a) were intended to includeonly those of the intoxicated *Page 164 person, then subsection (c) would have abrogated the common law by permitting an action by this class of persons, for personal injuries or property damage, against not only the dram shop but also the intoxicated person. While that may have been the intent of the legislature in 1909, such a legislative intent is not made clear by virtue of the failure to indicate to whom
these classes of individuals were related. Nevertheless, in view of the prevailing rule of intra-family immunity and the fact that there was no expression of an an intent to the contrary, we think the 1909 legislature must have intended that "wife, child, [and] parent" refer to those of the party injured in person by the intoxicated person.
However, insofar as the class of potential plaintiffs designated as "other person," we hold that, just as the statute says, this category of plaintiffs includes anyone who isproximately "injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person." And, as foreseen by Judge Cooley in Brooks, supra, this category of plaintiffs is as broad as proof of proximate cause will permit.
In this case, we hold that plaintiff was a member of a class the Dram Shop Act was designed to protect; consequently, we hold that the plaintiff here has stated a claim under the provisions of the Dram Shop Act, because he has alleged that he was injured in person by an intoxicated person by reason of the sale by Rhodes, Hammonds, and Beck, Inc., of intoxicating liquor or beverages "contrary to the provisions of law."
In finding that plaintiff stated a cause of action under the provisions of the Dram Shop Act, we point out that the incident giving rise to the claim here did not occur during the hiatus when there were no provisions making it unlawful for a licensee to dispense alcohol to a person who was visibly intoxicated. See Buchanan v. Merger Enterprises, Inc., 463 So.2d 121 (Ala. 1984), and Putman v. Cromwell, 475 So.2d 524 (Ala. 1985).[2]
Plaintiff may be able to prove that Rhodes, Hammonds, and Beck, Inc., violated the Dram Shop Act because, in September of 1982, the Alcoholic Beverage Control Board promulgated Regulation 20-X-6-.02, which reads, in part, as follows:
"20-X-6-.02. ON PREMISE LICENSEES.
". . .
 "(4) No on premise licensee may serve a person any alcoholic beverage if such person is acting in such a manner as to appear to be intoxicated.
". . .
 ". . . Statutory Authority: Section 28-3-49, Code of Alabama 1975."
Alabama Administrative Code, Vol. 1, Alcoholic Beverage Control Board Regulations.
Based on the foregoing, we are of the opinion that the trial court erred in granting summary judgment on plaintiff's claim based upon the provisions of the Dram Shop Act.
 II.
Does an injured person have a direct common law cause of action against one who served alcoholic beverages to another, who, in turn, caused the injury? Under the facts of this case, we think not.
As pointed out in Buchanan v. Merger Enterprises, Inc.,463 So.2d 121 (Ala. 1984), and DeLoach v. Mayer Electric SupplyCo., 378 So.2d 733 (Ala. 1979), this jurisdiction, *Page 165 
like the majority of jurisdictions in our nation, does not recognize a common law cause of action for negligence in the dispensing of alcohol. See also Hatter v. Nations,480 So.2d 1209 (Ala. 1985).
Plaintiff contends that in Buchanan, supra, this Court created a new cause of action "for negligent dispensing of alcoholic beverages by a licensed vendor." We respectfully disagree with that position.
In Buchanan, a narrow majority of this Court did recognize a cause of action, but only because of an "anomalous situation" created by legislative action. Buchanan involved an action brought against a lounge by the personal representative of a person killed by a drunk driver. The decedent was killed on July 29, 1981. Before 1980, Alabama law had made it unlawful for a liquor licensee to sell alcoholic beverages to visibly intoxicated persons. That was the gist of plaintiff's allegations.
The narrow application of the Buchanan decision was further amplified in Putman v. Cromwell, 475 So.2d 524, (Ala. 1985), wherein this Court noted, at 525:
 "In Buchanan this Court created a common-law action in a case which fell into a gap of the dram shop act. The accident which was the subject of suit in that case occurred during a time when there was no law prohibiting the sale of alcohol to visibly intoxicated persons. This hiatus in the law was due to a repeal of former Code provisions and a delay by the Alcoholic Beverage Control Board in promulgating rules under new Code provisions. This Court, however, allowed an action to lie, accepting 'the proposition that legislatively created principles of dram shop liability, not fully implemented by the acts themselves, can be effectuated by a common law negligence action.' Id., [463 So.2d] at 124." (Emphasis added.)
We conclude that no common law action exists under the facts alleged.
 III.
Did the trial court err in granting summary judgment against plaintiff's premises liability claims? We think not. The answer to this issue depends on whether plaintiff adduced any evidence, on the motion for summary judgment, that defendant Rhodes, Hammonds, and Beck, Inc., "knew or should have known of the likelihood of conduct on the part of a third person such as this assailant which would endanger the invitee." Henley v.Pizitz Realty Co., 456 So.2d 272 (Ala. 1984). The affidavit of Charles Daniel Rhodes, one of the three stockholders and directors of Rhodes, Hammonds, and Beck, Inc., established that within one year prior to the incident in question he had received no reports of assaults on patrons by third persons on the corporation's premises. He denied any knowledge of any violent disposition possessed by Shotts, or any knowledge that Ward would be assaulted by Shotts.
According to Loribeth Hirsberg, who was sitting next to Shotts, the assault occurred without warning.Arguendo, even if Shotts was intoxicated immediately before the altercation, this in itself would not have made the attack foreseeable. The answer was aptly stated by the Indiana Court of Appeals in Welch v. Railroad Crossing, Inc., 488 N.E.2d 383,388 (Ind.Ct.App. 1986):
 "There have been hundreds of cases considering the question of a tavern's common law liability for injuries caused by an assault by one of its patrons. We have found no case in which a court imposed a common law duty to protect against an attack on the theory that intentional criminal acts are foreseeable merely from the fact that alcohol is sold on the premises or that such acts are foreseeable solely from the fact that the assailant was served beyond the point of intoxication. There must be more because the foreseeability of a criminal act is determined by reference to the proprietor's knowledge of the actor's behavior. For the proprietor of a tavern to be held liable for a criminal assault under a common law theory of negligence, the proprietor must have been alerted to the likelihood of harm by the prior actions of the assailant, either on the occasion of the *Page 166 
injury or on previous occasions. See Annot., 70 A.L.R.2d 628, § 18 (1960); see also Annot., 97 A.L.R.3d 528 (1980); Annot., 65 A.L.R.2d 923, § 5 (1959)." (Emphasis in Welch.)
Under the facts of this case, therefore, the trial court was not in error in granting summary judgment on the premises liability claims.
Based on the foregoing, the judgment is due to be affirmed in part, and reversed in part, and the cause remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON, SHORES and STEAGALL, JJ., concur.
JONES and HOUSTON, JJ., concur in the result.
ADAMS, J., not sitting.
[1] The actual result reached by a majority of this Court inMaples was that the mother of a deceased minor could not maintain an action against the establishment that allegedly served alcohol to her minor child, who allegedly became intoxicated, and, as a result, was killed. Four Justices, following the Brooks v. Cook interpretation concluded that, since the intoxicated person has no right of action under §6-5-71, neither does the mother as the personal representative.
Three Justices reasoned that because the mother "was neither injured in person or in property, nor did she suffer any loss of support in consequence of the intoxication of her minor daughter . . . she is not a member of either of the . . . protected classes" under § 6-5-71. Maples, supra, 389 So.2d at 127, Justice Jones, concurring in part and dissenting in part, joined by Justices Shores and Beatty.
[2] Prior to September 30, 1980, § 28-3-260(2) made it unlawful for a licensee to dispense alcohol to a person "visibly intoxicated." In September 1980, of course, the legislature repealed that statute, and substituted for it a new Alcoholic Beverage Licensing Code, in particular § 28-3A-1 through -26. The new Code excluded any reference to sales to visibly intoxicated persons, and left it to the Alcoholic Beverage Control Board to formulate regulations governing the subject.
The reason for the dissent by Justice Shores inBuchanan, in which Chief Justice Torbert and Justices Maddox and Almon concurred, was that the incident which was the basis of the suit in Buchanan occurred during a time when "there existed neither a statute nor a regulation which made it unlawful to sell alcohol to a person either 'visibly intoxicated' or 'acting in such a manner as to appear to be intoxicated.' " 463 So.2d, at 128.