This is a case of first impression, involving the application of Alabama's Dram Shop Act (Ala. Code 1975, § 6-5-71), and an Alcoholic Beverage Control Board regulation prohibiting a licensee from selling intoxicating liquor to one who is visibly intoxicated.[1] The specific issue presented is whether a person who allegedly participated in drinking that led to the intoxication of another can recover damages under the provisions of the Act for injuries incurred in an accident allegedly caused by the intoxication of the other person.
 I.
Plaintiff John Paul Howard was 21 years old at the time of the accident. Plaintiff Sheila McIsaac, his mother, claimed to have been injured in person, property, or means of support on account of her son's injuries. Howard and his mother sued the Monte Carlo Club, Franco Sebasianelli, and Lamar Boutwell, pursuant to the provisions of the Alabama Dram Shop Act, §6-5-71, Ala. Code 1975, and in the complaint, as last amended, alleged various common law causes of action and violation of the Dram Shop Act; they alleged that the defendants had sold Donnie Frank Sellers intoxicating liquor while he was already visibly intoxicated, that is, contrary to law, and that as a proximate result thereof, Howard had suffered bodily injuries.
The defendants answered the complaint and subsequently filed a motion for summary judgment on the ground that the evidence showed that Howard was in complicity with the intoxicated person, and, therefore, was barred from any recovery. The trial court granted the motion, holding that the doctrine of complicity was applicable. The propriety of that judgment is the question presented on this appeal.
The evidence introduced in support of the motion for summary judgment, and that introduced in opposition thereto, indicate that on July 8, 1989, Sellers and Howard, went to the Monte Carlo Club, a lounge in the City of Mobile, at approximately 12:30 a.m. While they were in the Club, Sellers spent between $80.00 and $100.00 on the purchase of liquor for his consumption. Sellers and Howard left the Club at approximately 3:30 a.m., with Sellers operating his automobile. Howard was a passenger.
Shortly thereafter, a police officer pulled alongside Sellers and directed him to pull off the road. After stopping in a parking lot pursuant to the officer's instructions, Sellers sped off. The evidence is disputed regarding all that took place while the car was stopped. The defendants contend that the evidence shows that Howard participated in the decision to leave the scene. In any event, the police officer chased Sellers, who, according to the evidence, reached a speed in excess of 100 mph. During the chase, Sellers failed to make a turn and ran off the road, and in the ensuing accident Howard suffered severe injuries.
In entering a summary judgment for the defendants, the trial court made the following conclusions of law:
 "This doctrine [of complicity], which has not been addressed in Alabama, is a judicially created exception to liability under the Dram Shop Act. It is explained as follows in Sterenberg v. Sir Loin, Inc., 183 Ill. App.3d 631 [131 Ill. Dec. 941], 539 N.E.2d 294 (1989): *Page 322 
 " 'Under the doctrine of complicity, one who actively contributes to or procures the intoxication of the inebriate is precluded from recovery under the Dram Shop Act. One contributes to or procures an inebriate's intoxication by causing or encouraging the drinking which caused the intoxication or by willingly participating to a material and substantial extent in the drinking which led to the inebriate's intoxication. A plaintiff's willing participation is not measured by the amount of drinking in which [he] indulged, but by whether [he] voluntarily joined in the drinking activities of the person who became intoxicated and inflicted the injury. Willing participation also does not require that the plaintiff supply or purchase the liquor consumed. A plaintiff can willingly participate by encouraging or providing significant companionship in the drinking that caused the intoxication. Thus, if a plaintiff embarks with another on a tour of taverns and joins in the drinking of liquor, [he] cannot recover under the Dram Shop Act for injuries caused by the alleged intoxication of [his] companion.' (Citations omitted)."
As we understand the doctrine of complicity, it precludes recovery for a plaintiff who willingly participated to a material and substantial extent in the drinking that led to the inebriate's intoxication. Sterenberg v. Sir Loin, Inc.,183 Ill. App.3d 631, 131 Ill.Dec. 941, 539 N.E.2d 294 (1989). Complicity, as noted by the trial court, has its genesis in judicial decisions. Nelson v. Araiza, 69 Ill.2d 534, 538, 14 Ill.Dec. 441, 442, 372 N.E.2d 637, 638 (1978). It is based on the premise that one who is guilty of complicity in the inebriate's intoxication should not be allowed to recover under the Dram Shop Act. Id. Allowing the plaintiff to recover would undermine the purpose of the Act — controlling abuses of the liquor trade. Id.
There seems to be a split among the jurisdictions that have considered the doctrine of complicity as to whether particular conduct shows, as a matter of law, such participation in the drinking by the person injured as to bar that person's recovery. See, Annot., "Third Person's Participating in or Encouraging Drinking as Barring Him From Recovering Under Civil Damages or Similar Acts," 26 A.L.R.3d 1112 (1965).
One of the jurisdictions adopting the doctrine of complicity based its decision on the fact that the legislation of the state consistently reflected efforts to narrow the liability of Dram Shop owners. See Nelson, 69 Ill.2d 534, 14 Ill.Dec. 441,372 N.E.2d 637. Another court determined the statute to be only remedial in nature, serving no purpose in deterring the sale of liquor to an intoxicated patron. Craig v. Larson, 432 Mich. 346,355-57, 439 N.W.2d 899, 903 (1989).
Howard argues that this Court should not interpret Alabama's Dram Shop Act to permit the doctrine of complicity to bar a recovery. In his brief, he states:
 "The purpose of Alabama's Dram Shop Act is to prevent or deter owners of bars, or the like, from serving liquor or other intoxicating beverages to a person who is already visibly intoxicated. The legislature has intended to protect the public as a whole from such actions by bar owners. The appellants respectfully submit that there is no rational basis for denying a passenger in an automobile driven by one who is intoxicated and was continued to be served intoxicating beverages while visibly intoxicated, merely because the passenger in the automobile had done nothing more than merely participate in the drinking of liquor. One must keep in mind that the purpose of the statute is to prevent or deter bar owners from serving patrons excessive amounts of liquor or other intoxicating beverages. The adoption of the complicity doctrine or the like would afford violators of Alabama's Dram Shop Act a defense or immunity from liability, notwithstanding the bar owners' violation of the Dram Shop Act. In light of the intent of the legislature in Alabama there would appear to be no rational basis for excusing a bar owner from liability under Alabama's Dram Shop Act under the facts of this case." *Page 323 
He says that to adopt the reasoning of the Illinois court inSterenberg v. Sir Loin, Inc., 183 Ill. App.3d 631, 131 Ill.Dec. 941, 539 N.E.2d 294 (1989), the case relied upon by the trial court, and one of the principal cases relied on by the defendants here, would narrow the liability of dramshop owners, and he says that Sterenberg "is the most extreme utilization of the doctrine of complicity as a defense to liability under the Dram Shop Act, and that other cases relied upon by the defendants are also based upon a narrow construction of the scope of the civil damage[s] act under consideration."[2]
Howard also states that prior Alabama cases construing the Dram Shop Act show that "the Alabama legislature had the specific purpose and intent, in adopting the act, to deter drunk driving," and that "[i]n an effort to accomplish this objective, the Alabama legislature has imposed liability upon the bar owner for any injury caused by the serving of liquor to persons already intoxicated and then placing them on the public roads of Alabama." He, therefore, contends that this State has adopted the view adopted in Connecticut (Passini v. Decker,39 Conn. Sup. 20, 467 A.2d 442 (1983)), North Dakota (Aanenson v.Bastien, 438 N.W.2d 151 (N.D. 1989)), and Florida (Booth v.Abbey Road Beef Booze, Inc., 532 So.2d 1288 (Fla. Dist. Ct. App. 1988)).
 II.
We have examined cases from other jurisdictions to see how other courts have interpreted the civil damages statutes in those jurisdictions, especially relating to the defenses that may be interposed. After having examined those cases, we find that the jurisdictions that have considered the question of the defenses available to a dram shop or tavern operator are not in agreement on whether an injured person's own negligence, complicity, or assumption of risk will bar recovery. Annot., "Contributory Negligence Allegedly Contributing to Cause of Injury as Defense in Civil Damage Act Proceeding," 64 A.L.R.3d 849 (1975); cf. Zucker v. Vogt, 329 F.2d 426 (2d Cir. 1964) (Federal court, construing Connecticut law, held that contributory negligence was not a defense); see also, Sandersv. Officers Club of Connecticut, 196 Conn. 341, 493 A.2d 184
(1985); contra, Powers v. Niagara Mohawk Power Corp.,132 Misc.2d 123, 503 N.Y.S.2d 516 (N.Y. Sup. Ct. 1986); Walz v. Cityof Hudson, 327 N.W.2d 120 (S.D. 1982); Martin v. Heddinger,373 N.W.2d 486 (Iowa 1985).
In determining the intent of the legislature, of course, we need not necessarily go to other jurisdictions, because this Court, in several prior cases, has examined the intent of the legislature in adopting the Dram Shop Act. In Martin v. Watts,513 So.2d 958, 961 (Ala. 1987), this Court appended to its opinion a detailed history of the Act that had been written by the trial judge in that case. In Martin v. Watts, this Court held that intent is determined from the language of the Act, unless the language is ambiguous or leads to a result that the legislature could not have intended. The original legislative Act granting a right of action to a person injured in consequence of the illegal sale or disposition of intoxicating liquor or beverages was adopted by the legislature in 1909. SeeWard v. Rhodes, Hammonds, Beck, Inc., 511 So.2d 159, 161
(Ala. 1987). This Court, commenting on the intent and purpose of the 1909 Act in Webb v. French, 228 Ala. 43, 44-45,152 So. 215, 216-17, (1934), stated the following: "This act, one of the companion prohibition bills of that special session, covers more than thirty pages, and broadly speaking, may be deemed aprohibition enforcement measure." Id. (emphasis added). " 'The object of the early act was to correct the evils resulting from intemperate indulgence in intoxicating liquors, such as impoverishment of families, injuries to others, and the creation of public burdens.' " James v. *Page 324 Brewton Motel Management, Inc., 570 So.2d 1225, 1229
(Ala. 1990), citing Matalavage v. Sadler, 77 A.D.2d 39,432 N.Y.S.2d 103 (1980).
We conclude, based on these prior interpretations, that §6-5-71 is penal in nature and that its purpose is to punish the owners of taverns who continue to serve customers after they have become intoxicated. The legislature intended to stop or to deter drunken driving facilitated by bar owners, in order to protect the public at large from tortious conduct committed by any intoxicated person who was served liquor by a bar owner while in an intoxicated condition. A right of action under §6-5-71 runs in favor of two classes of persons; "(1) The person injured in person or property, [and] (2) [the] wife, child, parent, or other person . . . who has been injured through loss of means of support because of personal injury to the person furnishing the means of support." Ward, 511 So.2d at 161. The phrase "other person" constitutes a second class of claimants that encompasses "anyone who is proximately 'injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person.' And . . . this category of plaintiffs is as broad as proof of proximate cause will permit." James, 570 So.2d at 1229 (quoting Ward, 511 So.2d at 164). This Court has interpreted § 6-5-71 to encompass a broad spectrum of plaintiffs and will not now start limiting them to "innocent" parties alone. Consequently, we hold that the statute creates a strict liability[3] in favor of those persons covered under its provisions and authorizes those persons to maintain an action without regard to complicity or contributory negligence. To allow a plaintiff's contributory negligence or participation in the drinking to bar the plaintiff's recovery would be contrary to the purpose of the Dram Shop Act, as interpreted in prior cases decided by this Court. Cf. Dennis v. American Honda Motor Co., 585 So.2d 1336
(Ala. 1991), in which the Court held that contributory negligence was not a defense to an AMELD action, but did preserve the right of a defendant to plead assumption of risk or misuse of the product as a defense.
Although we hold that the Act creates strict liability in case of its violation, and that the defenses of complicity and contributory negligence are not available, we nevertheless hold that a defendant can raise as a defense that the injured party assumed the risk of injury, if the facts would support such a defense.
The assumption of the risk defense is not based on the plaintiff's fault or negligent conduct. See Kelton v. GulfStates Steel, Inc., 575 So.2d 1054, 1055 (Ala. 1991); Kemp v.Jackson, 274 Ala. 29, 145 So.2d 187 (1962). The plaintiff must know that a risk is present and must understand its nature. SeeKelton, 575 So.2d at 1055; Employers Casualty Co. v.Hagendorfer, 393 So.2d 999 (Ala. 1981). His choice to incur the risk must be free and voluntary. See Kelton, 575 So.2d at 1055;Kemp, 274 Ala. 29, 145 So.2d 187, 194-95. Admittedly, assumption of the risk, contributory negligence, and complicity are related doctrines; however, saying that is a far cry from saying the terms are interchangeable, or even that in general they mean the same thing.
Assumption of the risk proceeds from the injured person's actual awareness of the risk. Id. Contributory negligence, however, stems from the fact that the injured person contributed to the creation of the risk. See Kemp,274 Ala. at 37, 145 So.2d at 195. Furthermore, with assumption of the risk the plaintiff's state of mind is determined by the subjective standard, whereas with contributory negligence the court uses the objective standard. Prosser and Keeton on Torts, § 68 at 495 (5th ed. 1984). The factfinder looks at whether the plaintiff knew of the risk, not whether *Page 325 
he should have known of it. Kemp, 274 Ala. at 37,145 So.2d at 194.
At first glance, assumption of the risk and complicity appear to be similar in character. However, the two theories differ. Assumption of the risk is based on the concept that the plaintiff "knowingly assented" to the risk, id., whereas complicity is merely a "matter of involvement". Martin v.Heddinger, 373 N.W.2d 486, 489 (Iowa 1985). The doctrine of complicity focuses on preventing a person who participates in the drinking from recovering because that person is not innocent and is not entitled to protection under the Dram Shop Act. Berge v. Harris, 170 N.W.2d 621, 625 (Iowa 1969). The legislature, in adopting the Dram Shop Act, was interested in protecting those persons authorized therein to sue from the evils of liquor, innocent or otherwise. Assumption of the risk disregards a party's innocence or fault and focuses on whether he knew that there was a risk involved.
Based on the foregoing, we hold that the trial court erroneously granted the defendants' motion for summary judgment based upon the doctrine of complicity. The judgment of the court, therefore, is reversed as to Howard's claim and the cause is remanded to the trial court for further proceedings consistent with this opinion.
 III.
The next issue is whether Sheila McIsaac, Howard's mother, may recover under § 6-5-71 as a "parent . . . who [is] injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person." Ala. Code 1975, § 6-5-71. Howard, an adult, testified in his deposition that he had not lived at home for some time. Furthermore, he claimed that he was not a dependent, because he had a job with American Mobile Phone Company at the time of the accident.
McIsaac alleged in the complaint that she expended various sums of money on Howard as a result of the defendants' alleged violation of the Dram Shop Act; however, there was no evidence before the trial court to support her allegation. Upon filing their motion for summary judgment, the defendants produced evidence, through deposition excerpts, that there existed no genuine issue of material fact as to McIsaac's claims. Subsequently, the burden shifted to Mclsaac to show, by admissible evidence, a genuine issue of material fact.Bridgeway Communications, Inc. v. Trio Broadcasting, Inc.,562 So.2d 222 (Ala. 1990).
McIsaac failed to meet this burden in the trial court, and it is now too late for her to prove her allegations before this Court. This Court concludes that McIsaac presented no substantial evidence that she had been injured in "person, property, or means of support," as required by the Act. We affirm the summary judgment as to Sheila McIsaac.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ADAMS, KENNEDY and INGRAM, JJ., concur.
HOUSTON, J., concurs in part and dissents in part.
STEAGALL, J., concurs in the result.
[1] Ala. Code 1975, § 6-5-71, provides in pertinent part:
 "(a) Every wife, child, parent or other person who shall be injured in person, property or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall by selling, giving or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages."
The Alabama Alcoholic Beverage Control Board's regulation No.20-X-6-.02(4), promulgated pursuant to § 28-3-49, makes it unlawful for an on-premises licensee to serve alcoholic beverages to any person who appears to be intoxicated.
[2] The defendants do rely upon Craig v. Larson, 432 Mich. 346,439 N.W.2d 899 (1989) to support the judgment of the trial court. In Craig, as the plaintiffs point out, the court held, in part, that "the legislative history of the act reflects repeated efforts by the legislature to narrow the liability of Dram Shop owners [and that legislative amendments had] consistently limited, not expanded, Dram Shop liability."
[3] In Espey v. Convenience Marketers, 578 So.2d 1221, 1232
(Ala. 1991), this Court used an example of a legal sale of intoxicating liquor that was then given or sold to a minor, for instance, and said that liability would not be imposed, because "[s]uch a holding would for all practical purposes impose strict liability on retailers of alcohol." That statement, made in connection with the example used, should be read in the context in which it was used, and not otherwise.