The plaintiff, Rhea Charlene Belcher Duckett, as administratrix of her father's estate, appeals from a summary judgment entered in favor of defendants Wilson Hotel Management Company, Inc. ("Wilson"), and Holiday Inn Birmingham-Airport ("HIBA"). We reverse.
Our supreme court has transferred this case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
Duckett sued Holiday Inns, Inc., and William Coy Post, Jr., after Post shot her father, Donald Ray Belcher, outside Celebrations, a lounge located in the Holiday Inn near the airport in Birmingham. Belcher later died from his gunshot wounds. Duckett alleged, among other things, that the owners and managers of the motel had violated Alabama's Dram Shop Act, § 6-5-71, Ala. Code 1975, by serving alcohol to Post when he was visibly intoxicated. Duckett amended her complaint to add HIBA, the joint venture that owned the motel, and Wilson, the company that oversaw the management of the motel, including the lounge, for HIBA. She later dismissed Holiday Inns, Inc., as a defendant.
The Dram Shop Act states:
 "(a) Every wife, child, parent, or other person who shall be injured in person, property, or means of support by any intoxicated person or in consequence of the intoxication of any person shall have a right of action against any person who shall, by selling, giving, or otherwise disposing of to another, contrary to the provisions of law, any liquors or beverages, cause the intoxication of such person for all damages actually sustained, as well as exemplary damages."
Furnishing alcoholic beverages to an intoxicated person violates the rules and regulations of the Alabama Alcoholic Beverage Control Board. "No on-premise licensee may serve a person any alcoholic beverage if such person is acting in such a manner as to appear to be intoxicated." Ala. Admin. Code r.20-X-6-.02(4). See also Ala. Admin. Code r. 20-X-6-.15. A violation of these rules is contrary to law and is actionable under § 6-5-71. Ward v. Rhodes, Hammonds Beck, Inc.,511 So.2d 159 (Ala. 1987).
HIBA and Wilson moved for a summary judgment on two grounds: (1) their contention that Post had exhibited no visible indications of intoxication, and (2) their argument that, as a matter of law, Post's alleged intoxication cannot be considered the proximate cause of the shooting. The trial court granted the motion without stating its grounds. Meanwhile, the case proceeded to trial against Post, and Duckett obtained a $1,000,000 default judgment against him. Duckett then appealed the summary judgment for HIBA and Wilson. Post later filed a motion for a new trial, which was denied by operation of law, pursuant to Rule 59.1, Ala.R.Civ.P.; he then appealed the judgment against him. This opinion does not address that case.
Our standard of review in a summary judgment case is well settled. The summary judgment was proper if there was no genuine issue of material fact and HIBA and Wilson were entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. HIBA and Wilson had the burden to make a prima facie showing that no genuine issue of material fact existed and that they were entitled to a judgment as a matter of law.Long v. Jefferson Cty., 623 So.2d 1130, 1132 (Ala. 1993). If HIBA and Wilson made that showing, then the burden shifted to Duckett to present evidence creating a genuine issue of material fact so as to avoid the entry of a judgment against her. Id. In deciding whether there was a genuine issue of material fact, we view the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Id. The applicable standard of review is the "substantial evidence" rule. § 12-21-12, Ala. Code 1975. "Substantial evidence" is defined as "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
The record reflects that before the shooting, Belcher and Post were customers at Celebrations. Janice Howard, another customer, *Page 979 
stated that she and Belcher met at the lounge and sat together at a table with friends. Howard previously had dated Post, but had broken up with him. During the course of the evening, Howard had several encounters with Post, who asked her to dance, bought her a drink, passed her notes, and otherwise tried to get her attention. Post and Belcher also had some type of communication during the evening, and Belcher bought a drink for Post.
HIBA and Wilson supported their summary judgment motion with affidavits and deposition testimony from employees of the lounge and from a person who was a patron of the lounge on the evening of the shooting, all of whom had some contact with Post and all of whom testified that he did not appear intoxicated. Duckett countered with Howard's affidavit. Howard testified as follows:
 "As time progressed, I began to notice that [Mr. Post] was getting more and more inebriated. During the times that Mr. Post was with me [during their earlier relationship], he was quiet and seemed shy. But, now he was getting loud and a little bit arrogant. He got up and was kind of bouncing around all over the bar after a little while, just talking to everyone. Everytime he would get on the dance floor, he would make it obvious that he was trying to get my attention. He was getting louder and louder. . . .
 "Before Mr. Post shot Ray [Belcher], he had been getting drunk. He was getting up on the stage, singing and doing things that were out of his character from my personal observation. To my knowledge, he was not bothering anyone else but me. He was not abusive to other people but he was loud. He was hollering a lot. By the time he gave me the last note, he appeared to be very drunk."
Duckett also introduced Post's bar tab in opposition to the summary judgment motion. The tab was opened at 8:08 P.M. and closed at 9:57 P.M. During that time period, Post purchased four Black Russians. Belcher also bought a Black Russian for Post. Each Black Russian contains .625 ounces of vodka and .625 ounces of the liqueur Kahlua.
Viewing Howard's testimony in the light most favorable to Duckett, we find that Howard's affidavit presents evidence that Post was visibly intoxicated. Howard's observation of Post is supported by the evidence indicating that he was served at least five drinks, each containing over an ounce of liquor, within a two-hour period. This evidence conflicts with the testimony that Post did not appear intoxicated. We believe that this conflict is sufficient to create a genuine issue of material fact, thus precluding a summary judgment. The summary judgment procedure is not a substitute for a trial on disputed issues of fact and cannot be used to deprive a litigant of a proper trial to resolve genuine issues of material fact.Howell v. Mobile Infirmary, 337 So.2d 338, 340 (Ala. 1976).
HIBA and Wilson also contend in their brief that the summary judgment was proper because, they argue, as a matter of law, Post's alleged intoxication cannot be the proximate cause of subsequent intentional criminal behavior. HIBA and Wilson citeMoye v. A.G. Gaston Motels, Inc., 499 So.2d 1368 (Ala. 1986), for the proposition that the law does not impose liability on a business for injury occurring to an invitee as a result of the criminal conduct of a third person because the criminal conduct is generally the proximate cause of the plaintiff's injuries, not any action or inaction on the part of the business. This argument overlooks the fact that this case is based on the Dram Shop Act; under that Act an establishment can be liable when an inebriated person commits an intentional tort. See Ward v.Rhodes, Hammonds Beck, Inc., 511 So.2d 159 (Ala. 1987). The argument advanced by HIBA and Wilson is well taken as to Duckett's claim that they failed to provide adequate security, but she did not appeal the summary judgment as it related to that claim. Duckett appealed, and argued only, her Dram Shop Act claim, and the proximate cause argument has no application in that context.
The Dram Shop Act is penal in nature and is intended to punish the owners of establishments that continue to serve customers after they have become intoxicated. McIsaac v. MonteCarlo Club, Inc., *Page 980 587 So.2d 320 (Ala. 1991). We conclude that Post's shooting of Belcher is conduct that the Dram Shop Act was designed to protect against, and, therefore, that HIBA and Wilson were not entitled to a judgment as a matter of law based upon an absence of proximate cause.
We note that HIBA and Wilson argue that because Duckett filed her opposition to their motion for summary judgment on the day of the scheduled hearing on that motion, Rule 56(c)(2), Ala.R.Civ.P., allowed the trial court to disregard any evidence she presented. Rule 56(c)(2) provides that any statement or affidavit in opposition to a motion for summary judgment is to be served upon the opposing party at least two days before the hearing. Nevertheless, Rule 6(d), Ala.R.Civ.P., qualifies Rule 56(c)(2) by conferring upon the trial court the discretion to either permit or refuse to consider an untimely affidavit.Speer v. Pin Palace Bowling Alley, 599 So.2d 1140, 1142 (Ala. 1992). The trial court's order, entered two weeks after the scheduled date for the hearing, contains no findings or conclusions as to its reasons for entering the summary judgment in favor of HIBA and Wilson. In light of the evidence submitted, and without some indication that the trial court rejected her submission as untimely, we are reluctant to deprive Duckett of her opportunity to have this case heard by a jury. The trial court also had the discretion to consider the evidence filed by Duckett, and nothing in the record indicates that it did not consider all of the evidence filed relative to the summary judgment motion.
Let the judgment be reversed, and the cause be remanded to the trial court for further proceedings on Duckett's Dram Shop Act claim.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED.
All the judges concur.