Plaintiffs, Louis D. Kelton and his wife Gail Kelton, appeal from a summary judgment in favor of the defendant, Gulf States Steel, Inc.[1]
On October 28, 1986, Kelton, on his first day as an employee of Birmingham Industrial Painting Company ("BIPC"), was seriously injured when a section of grating in a walkway gave way under his weight, causing him to fall approximately 26 feet to the floor below. BIPC had contracted with Gulf States to furnish all labor and equipment used to replace the corrugated sheeting at the "regeneration plant."[2]
Gulf States' motion for summary judgment, which was grounded on the affirmative defense of assumption of risk, was supported by the following: 1) the deposition of Louis Kelton, stating that, although he had been advised that the walkways could be "rotten," they looked "O.K." to *Page 1055 
him; and 2) an affidavit of a co-employee of Kelton, Jerry Garmany, which stated, in part, as follows:
 "[P]rior to . . . entering the regeneration plant . . . he told both Roger Mayo and Louis Kelton on several occasions that the walkways were very dangerous and to be extremely careful where and how they walked and to make sure where they were walking was safe.
 ". . . [U]pon . . . entering the regeneration plant to proceed to the third level to establish a site to anchor rigging and scaffolding on top of the regeneration plant . . . they used cat walks or steps and walkways. . . . [A]s they proceeded up the steel steps and along walkways to the third level, Kelton was in the lead and Garmany was approximately two feet back of Kelton and Mayo was back of him. While proceeding to the third level, affiant repeatedly warned Kelton of the dangerous condition of the walkways; and in acknowledgment of the warnings, Kelton would place one foot in front of his walking to test the walkway by stomping on the walkway to see that it was secure and then proceeded to bring his other leg to the point where the walkway had been tested. . . . While on the third level, a blast of steam from the operation of the regeneration plant caused Kelton and Garmany to step onto a walkway at the third level which got them out of the steam. After the steam had subsided, Kelton re-entered the third-level walkway and stepped to his right when the walkway gave way and Kelton fell to the second level."
In opposition to Gulf States' motion for summary judgment, Kelton offered: 1) all evidentiary material of record; and 2) an affidavit of expert witness John Clement, stating the opinion that Kelton, under the circumstances, acted within standards of care applicable to iron workers.
With this factual background, we turn to the legal issue of the case; i.e., whether Kelton, as a matter of law, assumed the risks for his injuries and thus is barred from recovery. The affirmative defense of assumption of risk is narrowly confined and is restricted by two requirements: 1) knowledge and appreciation by the plaintiff of the danger he is incurring; and 2) voluntary consent to bear that risk. Kemp v. Jackson,274 Ala. 29, 145 So.2d 187 (1962); W. Prosser P. Keeton,Prosser Keeton on Torts § 68 (5th ed. 1984).
We conclude that there exists a question of fact as to whether Kelton, as a first-day employee, possessed the requisite appreciation of the risk and whether his actions, under the circumstances, amounted to a voluntary consent to bear the risk. Where, as here, the only viable options available to the injured employee were to remain on the job and try to avoid injury or to leave the employment and thus totally avoid the risk, the resolution of the question whether Kelton had assumed the risk is not subject to summary disposition, as a matter of law. Just as the resolution of the ultimate issue of Gulf States' liability is one for the jury's determination, so is the resolution of the affirmative defense of assumption of risk.[3] Therefore, we reverse the judgment and remand the cause.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Gail Kelton has a derivative claim for loss of consortium. Because her claim is dependent upon Louis Kelton's claim, the remainder of this opinion will refer only to Louis Kelton.
[2] The appellee's brief contains a detailed description of the location of the plant where the accident in question occurred: "Within the steel plant premises is an area and building designated as 'regeneration plant' which plant has a process involved in the recapturing of acid used in the steel processes so that the acid can be reused in the working of steel. The regeneration plant had steel walkways with iron and steel braces and fixtures within the regeneration plant and had three levels . . . within the regeneration building. The recapture of acid, acid fumes and other residue of the recapturing process had very [corrosive] effects on the steel within the regeneration plant which was composed of walkways, braces and so forth and . . . the walkways within the regeneration plant were in bad condition. . . . As a result of this deterioration, Gulf States was involved in an ongoing repairing process for the repair of the walkways and other fixtures within the regeneration plant which required replacement of various portions of the regeneration plant due to the corrosive effect of the acid on the steel."
[3] Compare our holding in Armstrong v. Georgia Marble Co.,575 So.2d 1051 (Ala. 1991), in which we affirmed a summary judgment for the defendant because an employee of the defendant had notified the vice president and co-owner of the plaintiff's employer of a potentially dangerous condition on the premises, thereby discharging its duty to give "sufficient warning" to a business invitee of a dangerous condition. *Page 1056