On April 11, 2002, Gayle Pittman sued United Toll Systems, LLC ("United Toll"), State Farm Mutual Automobile Insurance Company ("State Farm"), and certain fictitiously named defendants, seeking to recover damages for injuries she sustained in an automobile accident that occurred on the approach to a toll bridge operated by United Toll. The accident was caused by a chain reaction set in motion by icy conditions on the bridge. Pittman alleged negligence and wantonness against United Toll and alleged breach of contract as to both State Farm[1] and United Toll. United Toll moved for a summary judgment on all pending claims against it on the sole basis of the defense of assumption of the risk. Pittman responded and the trial court, after hearing oral arguments on the motion, entered a summary judgment for United Toll on all claims without stating its rationale. Pittman filed a motion to alter, amend, or vacate the trial court's judgment; the court denied that motion. Pittman appealed.
On appeal, Pittman argues that the trial court erred in entering a summary judgment for United Toll because, she says, in response to its summary-judgment motion she presented substantial evidence creating genuine issues of material fact (1) as to whether she had actual knowledge and appreciation of the danger of ice on the bridge and (2) as to whether she voluntarily proceeded onto the approach to the bridge with an understanding that there was ice on the bridge.
This Court's review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542
(Ala. 1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993) [overruled on other grounds, Bruce v. Cole, 854 So.2d 47 (Ala. 2003)]; Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
The accident occurred on one of the approaches to the Alabama River Parkway Toll Bridge, which is owned and operated *Page 845 
by United Toll. The bridge, which crosses the Alabama River separating Elmore County and Montgomery County, is used frequently by motorists traveling between the two counties.
The record reveals the following facts. Pittman, a resident of Elmore County, commonly used this route to travel to and from her job in Montgomery. On December 21, 2000, the day the accident occurred, the weather was cold and there was precipitation in the from of a wintry mix of rain and ice. Although Pittman's employer told her the day before that her employer could pick her up that morning because of the wintry conditions, Pittman decided to drive herself to work. Pittman left her home early that morning because of the wintry conditions. While she was on the way to work, Pittman heard over the radio that there were a number of accidents on Interstate 65, the other route she could use, and that traffic was being directed to the bridge. In her deposition, Pittman testified that, operating with the general knowledge that "ice usually freezes on bridges first," and in order to avoid crossing multiple bridges on Interstate 65, she decided to take the toll bridge. Because of the wintry weather and the possibility of ice on the road, Pittman drove more slowly than usual and kept a lookout for other vehicles. At approximately 7:00 a.m., Pittman arrived at the north end of the bridge in her vehicle traveling south toward Montgomery. Pittman stopped at the tollbooth, paid the toll, and exited the tollbooth plaza. The bridge is constructed so that the five lanes emerging from the five tollbooths merge into a two-lane road. It is this two-lane road that constitutes the actual bridge. Before reaching the point where the five lanes merge into two, Pittman saw a black truck in the lane immediately to her right. Pittman slowed and allowed the truck to merge in front of her. The truck did not make any erratic movements as it continued toward the bridge, but once it was on the actual bridge, Pittman saw it beginning to slide into the opposing, northbound lane. Pittman stopped her vehicle in an area between the tollbooth plaza and the bridge to avoid the same fate. When she had been stopped for only a few seconds, Pittman saw a vehicle, driven by Johnetta Johnson, cross the bridge in the northbound lane and swerve to avoid the black truck. Johnson lost control of the vehicle, and it slid across the northbound lanes, crashing into Pittman's stationary vehicle, causing Pittman's air bag to inflate. Pittman alleges that, not immediately, but as a result of the accident, she suffered injuries to her arm and spine.
 I. Actual Knowledge
United Toll, in its motion for a summary judgment and in its brief in support of its motion, asserted as its basis for a summary judgment only that by attempting to cross the bridge in the wintry conditions Pittman had assumed the risk of injury. Consistent with that position, United Toll never argued to the trial judge that the pleadings and the evidence did not establish a breach of some duty owed by it.
 "A summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; Vines v. Beloit Corp., 631 So.2d 1003, 1004 (Ala. 1994). A defendant relying on the affirmative defense of assumption of the risk bears the burden of presenting substantial evidence indicating that the plaintiff assumed the risk that gave rise to the injury. Superskate, Inc. v. Nolen, 641 So.2d 231, 237 (Ala. 1994)."
Ex parte Barran, 730 So.2d 203, 205 (Ala. 1998).
This Court has stated: *Page 846 
 "The affirmative defense of assumption of the risk requires that the defendant prove (1) that the plaintiff had knowledge of, and an appreciation of, the danger the plaintiff faced; and (2) that the plaintiff voluntarily consented to bear the risk posed by that danger. Gulf Shores Marine Indus., Inc. v. Eastburn, 719 So.2d 238, 240 (Ala.Civ.App. 1998). Assumption of the risk is described as `a form of contributory negligence applicable to factual situations in which it is alleged that the plaintiff failed to exercise due care by placing himself or herself into a dangerous position with appreciation of a known risk.' Cooper v. Bishop Freeman Co., 495 So.2d 559, 563 (Ala. 1986), overruled on other grounds, Burlington Northern R.R. v. Whitt, 575 So.2d 1011 (Ala. 1990)."
Ex parte Potmesil, 785 So.2d 340, 343 (Ala. 2000). Questions of assumption of the risk are usually within the province of the jury, but if there is no genuine issue of material fact, that is, if reasonable persons must draw the same conclusion from the facts presented, then whether the plaintiff has assumed the risk becomes a question of law for the court. See Sears v. WasteProcessing Equip., Inc., 695 So.2d 51, 53 (Ala.Civ.App. 1997). Otherwise stated, a summary judgment is improper if Pittman has presented any admissible evidence from which the trier of fact could conclude that she did not assume the risk of her injury.
United Toll argues that Pittman knew and appreciated the risks involved with using the bridge on December 21, 2000, citing seven factors it says prove that Pittman assumed the risk, as a matter of law:
 "Prior to the accident, [Pittman] was aware of the following: (1) it was icy and cold, (2) the forecast was for winter weather, (3) she had observed the icy weather, (4) she knew to be cautious, to maintain a reasonable speed and to maintain a reasonable distance from other vehicles due to the ice; (5) she was aware that other drivers may not be operating their vehicles properly, (6) she was aware that bridges can freeze and be icy, (7) was aware she did not have to drive to work that day, could have contacted her employer to come pick her up, and could have taken a different route to get to work."
(United Toll's brief, 10-11.) This Court has explained that "[a]ssumption of the risk proceeds from the injured person'sactual awareness of the risk." McIsaac v. Monte Carlo Club,Inc., 587 So.2d 320, 324 (Ala. 1991) (emphasis added). Further, "[i]n determining whether assumption of the risk has been proven, the fact-finder looks to the plaintiff's state of mind, using a subjective standard — asking whether the plaintiff knew of the risk, not whether he should have known of it. McKerley v.Etowah-DeKalb-Cherokee Mental Health Bd., Inc., 686 So.2d 1194,1197 (Ala.Civ.App. 1996)." Ex parte Potmesil, 785 So.2d at 343 (emphasis added).
The first two factors cited by United Toll do not even address the conditions on the bridge at the time of the accident. General knowledge of weather conditions is unconvincing as indicating an actual awareness of the condition of a particular bridge. The third factor — that Pittman "observed" icy weather — does not support an inference that Pittman actually observed the icy weather on the bridge when she was approaching it. Indeed, according to Pittman's deposition testimony, that was not the case:
 "Q [Counsel for United Toll]: As you headed out from your home, were any of the roads that you traveled on before *Page 847 
you got to the toll bridge icy or slick in any way?
"A [Pittman]: No. Just wet.
 "Q: All right. Any incidents where you felt your car was sliding or anything like that?
"A: No.
". . . .
 "Q: When you approached the tollbooth, did [the tollbooth attendant] say anything to you and did you say anything to him?
"A: No.
 "Q: Did [the tollbooth attendant] say anything to you about the weather conditions?
"A: No.
". . . .
 "Q: . . . — up to this position, are you slipping and sliding in any way?
"A: Not at that point, no.
"Q: Do you see any ice or patches of ice?
"A: None right there, no.
". . . .
 "Q: Did you see any ice or any conditions that caused you concern over here in this plaza area, that being from where you left the tollbooth before you got on the bridge?
"A: No.
"Q: So no problem driving as you get to this spot?
"A: Right.
". . . .
 "Q: . . . Could you physically, you being where you are in your position, see any ice on the bridge?
"A: Huh-uh (Negative response).
". . . .
 "Q: In other words, when you're here and this truck is sliding — and I know you are putting two and two together going it's icy. It's a bridge. The bridge is probably icy. That's probably what he's going on. But my question is, when you're sitting here as he's sliding, can you see any ice on the bridge?
"A: No.
"Q: Did you see any patches anywhere?
"A: No."
The fourth, fifth, sixth, and seventh factors cited by United Toll as evidence that Pittman had assumed the risk are very general and suggest that Pittman should have known the bridge could be icy, but do not address her actual knowledge. According to the record before us, no evidence was presented to indicate Pittman's "actual awareness" that there was ice on the bridge before the driver of the truck lost control of it. Therefore, there exist genuine issues of material fact to be resolved by the fact-finder.
 II. Voluntary Consent
Pittman also argues that United Toll did not establish the second prong of assumption of the risk, thus making the summary judgment improper. Pittman contends that she did not voluntarily consent to bear the risk posed by that danger, i.e., ice on the bridge. United Toll argues Pittman did voluntarily consent because she, on her own volition, attempted to get to her place of work by using the bridge. However, its argument misses the point. The question is — did Pittman voluntarily proceed toward the bridge with knowledge that there was ice on the bridge and with knowledge of the danger posed by the ice. In McIsaac, 587 So.2d at 324, this Court stated:
 "The assumption of the risk defense is not based on the plaintiff's fault or negligent conduct. See Kelton v. Gulf States Steel, Inc., 575 So.2d 1054, 1055 (Ala. 1991); Kemp v. Jackson, 274 Ala. 29, *Page 848 145 So.2d 187 (1962). The plaintiff must know that a risk is present and must understand its nature. See Kelton, 575 So.2d at 1055; Employers Casualty Co. v. Hagendorfer, 393 So.2d 999 (Ala. 1981). His choice to incur the risk must be free and voluntary. See Kelton, 575 So.2d at 1055; Kemp, 274 Ala. 29, 145 So.2d 187, 194-95."
After leaving the tollbooth plaza, Pittman saw the black truck hit a patch of ice and slide. Upon seeing that, Pittman stopped her vehicle before she actually reached the bridge. It was while Pittman was stopped that the chain of events leading to the accident transpired. In order to avoid hitting the black truck, Johnson swerved her car, hit a patch of ice, and then hit Pittman's vehicle while Pittman was still stationary. Pittman never guided her car into harm's way. Pittman never personally encountered any ice on the bridge, nor did she ever drive onto the bridge. Included in Pittman's deposition is the following testimony:
 "Q [Counsel for United Toll]: And you stayed exclusively in this one position here [off the bridge]?
"A [Pittman]: Absolutely.
"Q: And why do you stay here?
 "A: Because I saw [the black truck] — I was creeping along, and when I saw [the black truck] hit the ice and started sliding, I completely stopped.
". . . .
 "Q: All right. How long a period of time would you say it was from the time [Johnson] started into the skid until the time that she hit you?
 "A: I have no idea. Seconds. It all happened so fast."
As indicated by the record, Pittman never entered the zone of danger once she saw the black truck start sliding. Pittman was not the catalyst for the chain of events resulting in the collision, nor did she position herself as to be affected by that chain. Based on our review of the record, we conclude that Pittman did not voluntarily proceed with knowledge of the danger posed by ice on the bridge. As a result, the second prong of assumption of the risk has not been satisfied.
As to whether the summary judgment was proper as to the breach-of-contract claim, this Court has stated:
 "[I]t has long been the law in Alabama that failure to argue an issue in brief to an appellate court is tantamount to the waiver of that issue on appeal. An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. Humane Society of Marshall County v. Adams, 439 So.2d 150 (Ala. 1983); Boshell v. Keith, 418 So.2d 89 (Ala. 1982); McNeill v. McNeill, 332 So.2d 387 (Ala.Civ.App. 1976); Melton v. Jackson, 284 Ala. 253, 224 So.2d 611 (1969); Pappas v. Alabama Power Company, 270 Ala. 472, 119 So.2d 899 (1960); Schneider v. Southern Cotton Oil Co., 204 Ala. 614, 87 So. 97 (1920)."
Ex parte Riley, 464 So.2d 92, 94 (Ala. 1985). Pittman does not contend before this Court that the summary judgment on the breach-of-contract claim is in error. Accordingly, the issue of the appropriateness of the summary judgment on the breach-of-contract claim is deemed waived, and that issue is not before this Court.
For the foregoing reasons, the trial court's summary judgment in favor of United Toll on Pittman's negligence and wantonness claims is due to be reversed and the cause remanded for further proceedings.
REVERSED AND REMANDED. *Page 849 
HOUSTON, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
SEE, J., dissents.
[1] Pittman and State Farm reached a settlement, and State Farm was dismissed from the case on October 30, 2002.