MURDOCK, Justice.
Frank Kruse, administrator ad litem for the estate of Dansby W. Sanders, appeals from a summary judgment entered by the Mobile Circuit Court in favor of R.T. Vanderbilt Company, Inc., now known as Vanderbilt Minerals, LLC (“Vanderbilt”), in a wrongful-death áction. We reverse and remand.

I. Facts and Procedural History

Dansby' W. Sanders (“Dansby”) was diagnosed with mesothelioma on February 11, 2009; he sued numerous defendants on February 11, 2010, alleging that he had been exposed to asbestos through products manufactured and distributed by those defendants during the 37-year period he worked for Mobile Paint Company (“Mobile Paint”). Dansby filed an amended complaint on September 1, 2010, naming Vanderbilt as a defendant because of its role as a supplier of industrial talc under the brand name “Nytal.”
*44 Dansby worked for Mobile Paint from 1965 to 2002. Mobile Paint manufactured numerous types of architectural and industrial paint. Until 1975, Mobile Paint’s production facility was located on Conception Street in the City of Mobile (“the Conception plant”). It is undisputed that the Conception plant was an antiquated building without adequate ventilation and that the facility was dusty. In 1975, Mobile Paint moved its operations to a brand-new facility located in Theodore (“the Theodore plant”). The Theodore plant had a ventilation system and there were exhaust systems over the individual paint-mixing vats. Dansby worked at both facilities.
Each type of paint manufactured by Mobile Paint was assembled by a recipe called a “batch ticket.” Each batch ticket indicated the type and amount of raw materials to be used for a particular type of paint. Each type of raw material on the batch ticket was assigned a code number. Mobile Paint workers referred to the dry raw materials generally as “pigment”; the dry raw materials included colors, fillers, hardeners, and talc. Many paints manufactured by Mobile Paint, but not all, contained talc. At Mobile Paint, code numbers 342 and 343 referred to specific types of talc: code 342 referred to “Nytal 400” and code 343 referred to “Nytal 300.” Although workers usually identified raw materials by code numbers, some workers could relate code numbers to brand names, including Dansby’s coworkers, Jimmy Sanders (no relation to Dansby) and James Nord.
Mobile Paint consisted of separate departments, including, but not limited to, the “bull gang,” warehouse, production department, and filling department. The bull gang received the materials on the loading dock and transported them from boxcars and trucks to the warehouse, where they were stored until needed. The mixing of raw materials occurred in the production department. After a batch of paint was mixed, it went to the filling department, where workers filled containers with the mixed paint.
During his first three months at Mobile Paint, Dansby worked on the bull gang. At the Conception plant, all raw materials were unloaded by hand because there were no forklifts. Jimmy Sanders testified that Nytal talc was one of the products unloaded from boxcars.[1] Dansby testified that the boxcars were “all kinds of dusty”; coworker James Nord testified that the boxcars were “totally dusty”;[2] and Jimmy Sanders testified that the dust in the boxcars was very bad, almost like smoke, because of bags that had broken open. Jimmy Sanders stated that the workers had to transfer the contents of broken bags to new bags, which also exposed the workers to dust.
After working on the bull gang, Dansby was promoted to work inside the plant in the filling department. From 1965 to 1975, Dansby worked in the filling department at the Conception plant. In the filling department, Dansby hand-filled cans of paint. Later, when Mobile Paint obtained machinery that could fill the paint cans, he *45 operated automatic filling machines. Dansby testifie'd that in his time employed at Mobile Paint he spent “99 percent of [his] time” in the filling department. Nord, who worked for a period in the mixing department, testified that almost every, day Dansby had to visit the portion of the Conception plant where mixing was done in order to.“pull paint.”[3] Dansby did not wear a mask when he went to pull paint. Nord testified that the mixing department was very dusty because mixers cut open bags of dry raw materials and poured them into the mills (the machines that ground the pigments).' The grinding of the materials also created a lot of dust. Vanderbilt’s shipping records'showed that it sold quantities of Nytal 300 and Nytal 400 to the Conception plant in 1974 and 1975. Nord also stated that Nytal 300 and Nytal 400 were used every day in mixing paint at the Conception plant.
In 1975, Mobile Paint opened the Theodore plant. James Hays, vice president of and technical director at Mobile Paint, testified that Vanderbilt was a “major source” of talc supplied to Mobile Paint from 1965 to 2009. More specifically, Hays stated that the types of talc he recalled being used at the Theodore Plant were “[t]he Nytal 200, 300, and 400.” Nord testified that “at the new factory” codes 342 and 343 were “very popular in just about all our oil paints.” He further confirmed that “343 was used a lot from the mid-'70’s to 2002 at [the] Theodore [plant].” Additionally, Vanderbilt shipping records indicated that Mobile Paint purchased large quantities of Nytal 300 from Vanderbilt in 1976 and 1977. In 1978, Mobile Paint also started purchasing Nytal 400 from Vanderbilt, and it continued to purchase large quantities of Nytal 300. Those records show that Mobile Paint purchased Nytal 300 and 400 from Vanderbilt at least through the year 2000.
At the Theodore plant, the mixing department was located on the second, floor of the plant, what the employees called “the mezzanine.” Everyone at the Theodore plant was required to wear a mask when they were in the mixing department. Both Jimmy Sanders and Nord. testified that Dansby knew about this requirement. Nord also testified that code 342 was not used as often at the Theodore plant but that code 343 was used every day and that mixing it produced a lot of dust.
Dansby -continued to work in the filling department .at the Theodore plant from 1975 until his retirement in 2002. Just as he did at.the Conception plant, Dansby had to enter the mixing area of the plant in order to pull paint. Nord testified that Dansby entered the mixing area at least once every day and sometimes three .times a day from the day the Theodore plant opened to the day Dansby retired because pulling paint was part of his job. Nord testified that he observed Dansby just about every day because of this schedule. Jimmy Sanders also testified that he observed Dansby in the mixing department. Both Jimmy Sanders and Nord testified that they could not definitively state that during the periods Dansby was in the mixing department talc was being added to a batch of paint. Nord also stated that Dansby would have been exposed to dust in -his own area of the filling department because it was located on the first floor below the mezzanine and large amounts of dust floated down to the first floor from the mezzanine and routinely had to be cleaned up.
*46 Jimmy Sanders was specifically asked whether the Nytal products contained asbestos.
“Q. ... [I]f they [the lawyers for the defendants] were to ask you if you can testify if Dan Sanders was ever exposed to an asbestos-containing product after 1979, what would you say?
“A. MS. BROCK: Object to the form.
“[Sanders:] Yes. Since — since the 341 and 342 was the asbestos — was the asbestos material, oh, yeah.
“BY MR. KEAHEY:
“Q. But sitting—
“A. I didn’t know the difference, I didn’t know what it was — that’s what it was. No asbestos because all we know, to just get it together and mix it.
“Q. But you’ve learned since you left Mobile Paint Company that the products you’ve talked about here today, the pigments contained asbestos; is that correct?
“MS. BROCK: Object to the form.
“[Sanders:] Yeah, I didn’t know it until after Dan died. I didn’t know it, that’s when I — ”
As noted above, on February 11, 2009, Dansby was diagnosed with mesothelioma. On February 11, 2010, Dansby sued multiple defendants alleging that they had manufactured and distributed various products containing asbestos to which Dansby was exposed while he worked for Mobile Paint and further alleging that such exposure caused him to develop mesothelioma. On Séptember 1, 2010, Dansby amended his complaint to add Vanderbilt as a defendant based on the fact that it manufactured and sold industrial talc under the Nytal brand name that Mobile Paint regularly used as a component in its paint products. Dans-by died on October 10, 2010. On March 11, 2011, his widow Anna Sanders (“Sanders”) filed an amended complaint, both individually and as executor of Dansby’s estate, in which she added a wrongful-death cause of action. Sanders died on August 3, 2013. On August 21, 2013, Frank Kruse, administrator ad litem for Dansby’s estate, was substituted as a party plaintiff.
In- November 2011, Vanderbilt submitted its “Responses to Plaintiff’s Interrogatories and Requests for Production of Documents.” In - those responses, Vanderbilt repeatedly stated that “R.T.. Vanderbilt never manufactured or sold a product that contained asbestos”; that “R.T. Vanderbilt products- never contained asbestos”; and that “[t]he talc did not contain asbestos and does not pose the same health risks as asbestos.” Despite these categorical statements, Vanderbilt admitted in its responses that, “[i]n the past, as a result of imprecise definitions of asbestos, there was some confusion with the distinction between non-asbestiform tremolite and tremolite asbestos.” Specifically,,
“[i]n the 1970’s, certain entities (including [the National Institute for Occupational ■ Safety and Health] and [the Mine Safety and Health Administration] ) mistakenly assumed or identified asbestos in the talc. As a result of incomplete or faulty initial'review, numerous efforts to correctly characterize the mineral components of R.T. Vanderbilt talc have been undertaken. Many of these studies have been sponsored by R.T. Vanderbilt as part of the company’s ongoing efforts to understand the composition of its products. R.T. Vanderbilt has also sponsored efforts to determine if its talc is capable' of causing diseases typically associated with exposure to asbestos ,... These studies confirm that R.T. Vanderbilt’s talc does not cause ‘asbestos-related’ disease. Other studies not sponsored by R.T. Vanderbilt ... confirm these results.”
Vanderbilt also related that
“[s]ome early analysis of specific talc grades containing a small amount of fib *47 rous talc mistakenly identified these talc fibers as chrysotile. Other analysis identified transitional fibers as antho-phyllite asbestos. As a result of the incorrect analysis, R.T. Vanderbilt labeled specific talc products that were produced from approximately 1974-1978 with an [Occupational Safety and Health Administration] asbestos standard warning label. The warning label on these products read ‘Caution-Product Contains Asbestos Fibers: Avoid Creating Dust. Breathing Asbestos Dust May Cause Serious Bodily Harm.’ ”
On May 22, 2012, the trial court entered an amended scheduling order in which it provided that, “[o]n or before September 13, 2012, Defendants may file motions for summary judgment on product identification and statute of limitations issues.” To facilitate any such motions, the order required that “depositions of Plaintiff, Plaintiffs fact witnesses, family members, and product identification coworker witnesses shall be completed by August 13, 2012.” The order also provided that, “[o]n or before August 15, ,2012, Plaintiff shall identify expert witnesses to be called to testify in this case.” Depositions of the plaintiffs experts were to be “completed on or before February 28, 2013.”[4]
On August 15, 2012, Sanders disclosed her expert witnesses. Among the experts Sanders listed in the disclosure were: Dr. Jerrold L. Abraham, a pathologist from Upstate Medical University; Dr. Mark Ri-gler, a materials analyst and microbiologist; materials analyst Richard L. Hatfield; geologist and microscopist Sean Fitzgerald; and Dr. James R. Millette, an environmental-materials analyst. Attached to the disclosure as an exhibit was Dr. Abraham’s report, in which he stated:
“Most of the talc that the Mobile Paint Company used came from RT Vanderbilt and Luzenae Corporation. Some of the Vanderbilt talcs that were used from 1965 to 2002 include, but are not limited to NYTAL 200, NYTAL 300 and NY-TAL 400. I am aware from my own studies and those of other laboratories that NYTAL contained asbestiform fibers,. including anthophyllite as, well as asbestiform talc.”
Dr. Abraham also asserted:
“There are numerous well documented mesotheliomas developing in persons exposed to asbestiform talc such as that contained in the NYTAL products. Detailed mineralogical analysis of both the NYTAL products and fibers recovered from patients’ lung tissue have confirmed the unusual mix of asbestiform and non-asbestiform fibers of talc with many asbestiform ‘transitional’ fibers in which the crystalline structure in a single fiber can be shown to match antho-phyllite asbestos in one region of the fiber and talc in another.”
Dr. Abraham concluded:
“Asbestos exposure is well known to be the cause of nearly all malignant mesotheliomas. Based on all the available information I can conclude to a reasonable degree of medical certainty that Mr. Sanders’ exposure to talc containing asbestos fibers (including asbes-tiform talc) was a substantial contributing cause of his malignant mesothelioma and death.”
On September 13, 2012, in accordance with the scheduling order, Vanderbilt submitted a motion for a summary judgment related to product identification, i.e., a motion addressing the issue whether Dahsby *48 had ever been exposed to talc supplied by Vanderbilt. In the motion, Vanderbilt argued that “[Sanders] has failed to come forth with any evidence that Mr. Sanders was directly exposed to R.T. Vanderbilt talc while working at Mobile Paint. Further, [Sanders] has failed to show that Mr. Sanders’ alleged exposure to R.T. Vanderbilt talc was a substantial contributing factor to his injuries.” Vanderbilt noted that “[a]t no time during Mr. Sanders’ two-day deposition did he identify R.T. Vanderbilt, Nytal or talc as a product or material that he worked with or around at Mobile Paint.” Vanderbilt insisted that “[t]here is no evidence that Mr. Sanders ever personally worked with any R.T. Vanderbilt talc.” Vanderbilt argued:
“To assume that Mr. Sanders was exposed to R.T. Vanderbilt talc merely because he entered the production department on occasion would be pure speculation. First, not all paint contained talc.... And not all talc used at Mobile Paint was R.T. Vanderbilt talc. Second, there is no evidence that anyone was ever working with talc, much less R.T. Vanderbilt talc, in the production department when [Dansby] was present.”
Vanderbilt further argued in the motion that “[e]ven assuming, arguendo, that Mr. Sanders was somehow exposed to R.T. Vanderbilt talc, a mere showing of minimum exposure is insufficient. In order to show causation in an asbestos action, a plaintiff must show that the defendant’s conduct was a substantial factor in causing the harm.” In short, Vanderbilt argued in its summary-judgment motion that Sanders failed to produce evidence indicating that Dansby had been exposed to a Vanderbilt product during his employment with Mobile Paint and that, even if she had produced such evidence, he did not demonstrate that Dansby’s exposure to a Vanderbilt product was a substantial factor in his injuries and subsequent death. No portion of Vanderbilt’s summary-judgment motion raised the issue of a lack of evidence indicating that Vanderbilt’s products contained asbestos. Vanderbilt did not submit any supporting documents with its motion.
On September 17, 2012, the trial court set Vanderbilt’s motion to be heard on October 19, 2012. Subsequently, the parties agreed to reschedule the hearing for November 2, 2012.
On October 22, 2012, Sanders filed her response to Vanderbilt’s summary-judgment motion. Sanders argued that, “[d]espite Vanderbilt’s contentions, the evidence in this case shows that genuine issues of material fact exist as to whether Mr. Sanders was exposed to Vanderbilt’s asbestos-containing talc. The record contains ample evidence to support the conclusion that Mr. Sanders breathed the dust from Vanderbilt’s talc.” The above-quoted statement was accompanied by a footnote that stated: “[Sanders’s] contention in this case is that R.T. Vanderbilt’s Nytal talc products contained asbestos. No doubt this will be addressed in the next round of motions for summary judgment, but for the purposes of its instant Motion Vanderbilt has not contested [Sanders’s] contention.” Sanders in her response quoted extensively from the deposition testimony of Dansby’s coworkers in an effort to show that Dansby had, in fact, been exposed to Vanderbilt talc. She also contended that whether Dans-by’s exposure to Vanderbilt talc was a substantial factor in causing his injuries and subsequent death was an issue for the jury. Sanders, like Vanderbilt, did not submit documents along with her response to the motion for a summary judgment, choosing instead to rely on evidence already submitted in the record.
*49 On November 2, 2012, the trial court held a hearing on Vanderbilt’s motion for a summary judgment. At the outset of the hearing, Vanderbilt’s -counsel acknowledged that “[w]e have filed a Motion-'for Summary Judgment on the issue of product identification of an asbestos containing product.” Instead of discussing the issue whether there was sufficient evidence that Dansby had been exposed to a Vanderbilt product, however, Vanderbilt’s counsel proceeded to argue that “R.T. Vanderbilt never manufactured asbestos containing products. R.T. Vanderbilt talc never contained asbestos. These are facts that R.T. Vanderbilt has asserted from the very beginning of being brought into this litigation.’’ Vanderbilt’s counsel insisted that “asbestos content” is “essential to a product identification motion.” She further contended:
“It makes no sense to argue at this late date that [Sanders] should be required to have time to prove that — to prove up evidence that our product did or did not contain asbestos. [Sanders] is required to come forward with that evidence now. He doesn’t — she doesn’t get a second bite at the apple. And there’s absolutely no evidence to dispute the fact that R.T. Vanderbilt’s talc did not contain asbestos.”
Sanders’s counsel responded that, -'“as far as in product identification and causation, asbestos content are basically three different things.- And we’re here today on product identification summary judgment. That’s my understanding of why we’re here today. And we’ve more than met that burden.” Sanders’s counsel proceeded to present multiple slides to the trial court quoting the deposition testimony of witnesses that he argued illustrated'how often Dansby was exposed to Nytal. The following exchange between Sanders’s counsel and the trial court then occurred:
“MR. KEAHEY: ■ But geologically at least [our] experts have found now and will be willing to testify that those products definitely contained asbestos. But that’s on down the road. And to me that’s causation. That’s the expert discovery and I didn’t want to get into that today because it was my understanding today we’re just here strictly on product identification.... Again, these are just copies of the invoices which that alone, if you just, take the invoices, and you take the fact that [Dansby] was there within probably fifty feet on a conservative estimate, between these products being used, that more than gives you product identification. And we go—
“THE COURT: You know what she’s going to say, of our product that contains no talc — I mean, contains no asbestos. .
“MR. KEAHEY: Yes, sir, and they’re contending that it contains — And that’s going to really be the real fight in the case to be honest with you. Their people are going to say it didn’t contain it and our people are going to say it did. And it’s" going to be a jury question. That’s what happened in Delaware about three or four months ago. And so the Nytal product, the Nytal 400, 300 and 200, were simply different grades of the Nytal 100 which was the product at issue in the Delaware trial about three to four months ago. And the plaintiffs experts in that case did definitely convince the jury that that product contained asbestos. Again, I’m just trying — I’m not trying to get over into causation and the expert.”
After Sanders’s counsel finished his argument, Vanderbilt’s counsel responded: “Your Honor, ! don’t know where to begin. He stül has not come forward with any evidence in the record that there’s asbestos in R.T. Vanderbilt’s talc.” The trial *50 court asked Vanderbilt’s counsel to explain why the issue whether the talc contained asbestos was not a jury question. Vanderbilt’s counsel answered:
“Because there isn’t a question of fact. He hasn’t pointed to an affidavit, a deposition, any verified interrogatory responses. There’s no evidence — [Sanders] has the burden now — [Sanders] has the burden of coming forward with admissible evidence to show there’s a question of fact on our position that there’s no evidence that our product contains asbestos. We have shown — Excuse me. We have met our burden in showing that there’s a lack of evidence to support [her] claim. Now, their burden is to come forward looking at the specific evidence in the record, not what’s going on in another state, not what is going on in Plaintiffs counsel’s head, not what he thinks talc litigation has become or used to be or will be. We’re talking about evidence in thé record.;.. ”
On the same day the hearing was held on Vanderbilt’s summary-judgment motion, November 2, 2012, Sanders filed a motion to compel the production of, among other things, “5. grams each of NYTAL 300 [and] NYTAL 400” for testing. On December 21, 2012, Vanderbilt responded to the motion by contending that “discovery closed on September 13, 2012, the deadline for filing product identification motions for summary judgment” and by noting that during two years of litigation Sanders had never requested such samples. Vanderbilt also insisted that Sanders
“would have this Court believe that her experts have been deprived of the opportunity to test Vanderbilt talc — nothing could be further from the truth. R.T. Vanderbilt’s talc is perhaps the most tested talc in the world. Reliable tests show that R.T. Vanderbilt talc does not contain asbestos, and no regulatory agency considers any of the components in Vanderbilt talc to be asbestos. The U.S. government has tested R.T. Vanderbilt’s talc, and these results are in the public domain; [Sanders’s] own experts have been involved in litigation against R.T. Vanderbilt. Not one but four of .[Sanders’s] experts have tested R.T. Vanderbilt talc in the past. [Sanders has] failed to show why her experts would need samples to test when they have already tested Vanderbilt talc in the past.”
The response further claimed that “[Sanders’s] own experts have tested samples of the talc she now seeks. Specifically, Jerrold L. Abraham, M.D.; James R. Millette, Ph.D.; Dr. Mark Rigler; and Richard Hatfield have all tested R.T. Vanderbilt talc and have been retained as experts in numerous talc cases in the past.”
In January 2013, Sanders filed a reply to Vanderbilt’s response to the motion to compel, in which she argued:
“Vanderbilt’s Response begins with the falsehood that discovery closed in this case on September 13, 2012, basing this assertion on the fact that September 13 was the deadline for defendants to'file motions for summary judgment on product identification and statute of limitations issues. This is quite simply not an issue related to Vanderbilt’s motion for summary judgment, which was purely based on product identification grounds and which essentially conceded — at least for the purposes of that Motion — that R.T. Vanderbilt’s talc contained asbestos. The asbestos content of R.T. Vanderbilt’s talc is properly addressed by expert analysis of the talc, which is all that [Sanders] seeks in this case. As contemplated by the Scheduling Order, in effect in this case, an additional deadline exists for., motions for *51 summary judgment which are not'based purely on product identification and/or the statute of limitations. [Sanders] anticipates that Vanderbilt will avail itself of this opportunity and file an additional motion for summary judgment which will no doubt contest the asbestos content of its talc. But that future deadline is immaterial to Vanderbilt’s argument that discovery closed on September 13 or that the talc samples at issue were germane to its prior-filed motion for summary judgment.”
In a supplemental reply to Vanderbilt’s response to the motion to compel, Sanders stated that her “experts have NOT, in fact, tested any of the NYTAL line of [Vanderbilt] talc products and several other [Vanderbilt] talc products.” (Capitalization in original.) Sanders attached to her supplemental reply a joint report authored by Dr. Rigler and Hatfield. In the report, Dr. Rigler and Hatfield stated, in part:
“Talc products manufactured by [Vanderbilt] such as Nytal and Motildene talcs, in addition to containing fibrous talc, contains an amount of tremolite and anthophyllite asbestos. The fact that R.T. Vanderbilt tale products contain asbestos has been proven by analytical laboratories numerous times over the years. Analyses performed by ,R.T. Vanderbilt, by this laboratory (MAC, LLC), by MVA Scientific Consultants (Millette Van Der Wood and Associates), and by MG line Laboratories all confirm the presence of these forms of asbestos in Nytal talc....
“It is our opinion that data from these laboratories have conclusively shown that R.T. Vanderbilt talc products contain, or have contained in the past, various asbestiform minerals including tre-molite, anthophyllite, and chrysotile.”
The trial court heard arguments on Sanders’s motion to compel on January 25, 2013, and on January 29, 2013, the court denied the motion.
Dr. Rigler was deposed on April 12, 2013. In his deposition, Dr. Rigler stated: “R.T. Vanderbilt talcs, specifically the ones that I’m referring to in my report, have contained asbestos and may' continue to contain asbestos at this time if they are of the same batch, lot, year, that type of thing, so that they have been verified to contain asbestos.” Dr. Rigler also testified that he had' produced a summary of his report finding that 11 Vanderbilt talc products “were verified to contain asbestos.” He stated that those products included, among others, “Nytal 400.”
' Sean Fitzgerald was deposed on May 10, 2013. Fitzgerald testified that,. “with a reasonable degree of scientific certainty, ... the talc that was used by Mr. Sanders contained asbestos, [and] the way it was used created exposure.” More specifically with regard' to the asbestos content of Vanderbilt talc, Fitzgerald was asked by Vanderbilt’s counsel:'
“[I]f you’re asked at the trial, have you tested. a Nytal sample, you would say?
“A. Yes.
“Q. And if you were asked at trial if you found — if there was asbestos in the Nytal sample you tested, you would say?
“A. Yes”.
Fitzgerald was also asked: “If you are asked at the trial of this ease whether or not ‘the tremolite ór anthophyllite in Nytal was asbestiform, what’s your answer going to be?” He answered: “They were asbes-tiform.” Finally,' Fitzgerald was asked:
“But in your opinion, the industrial talc sold by Vanderbilt also includes tremol-■ite asbestos and anthophyllite asbestos, right?
“A. It does.”
*52 Dr. Millette was deposed on ■ May 9, 2013. At his deposition, Dr. Millette produced over 500 pages of documentation on the testing of Vanderbilt talc products. In a 2010 report, Dr. Millette stated that he found asbestos in Nytal talc. Specifically, he stated that “Nytal 100 talc and Nytal 100 HR talc (Samples V0087 and V0088) contain elongated particles (particles with a minimum aspect ratio of 3:1). These particles are mineral in nature.and therefore are elongated mineral particles (EMPs). Both samples contain fibrous tremolite, fibrous talc, fibrous anthophyl-lite and fibrous transitional (anthopho-talc) minerals.”
On July 7,2013, the trial court entered a summary judgment in favor of Vanderbilt. In. the sole paragraph constituting the findings of fact, the trial court stated: “The record shows that R.T. Vanderbilt never manufactured or sold an asbestos-containing product. The record further shows that R.T. Vanderbilt’s talc did not contain asbestos.” Based on that finding, the trial court concluded:
“Pretermitting whether Dansby Sanders was directly exposed to R.T. Vanderbilt talc, R.T. Vanderbilt has met its burden on summary judgment by showing that no genuine issue of material fact exists as to whether Mr. Sanders was exposed to an asbestos-containing product for which R.T. Vanderbilt is responsible. Moreover, R.T. Vanderbilt presented affirmative evidence that it never manufactured or sold talc that contained asbestos. Even if Mr. Sanders was exposed to R.T. Vanderbilt’s talc as [Sanders] alleges, the undisputed evidence shows that the talc did not contain asbestos. Thus, R.T. Vanderbilt has met its burden on summary judgment by showing an absence of evidence exists to support [Sanders’s] claims.”
(Emphasis added.) The trial court further concluded that, “[p]ursuant to Ala. R. Civ. P. Rule 54(b), this Court finds there is no just reason for delay'and expressly directs the Clerk to enter final judgment in favor of Defendant R.T. Vanderbilt Company, Inc.”
On July 19, 2013, Sanders filed a “Motion for Reconsideration of the Summary Judgment Entered in Favor of Vanderbilt Minerals, LLC,” in which Sanders asked the trial court to vacate the summary judgment. In the motion to vacate, Sanders sought to “direct the Court’s attention to specific evidence on the record at the time of the summary judgment hearing and to supplement the record with newly discovered evidence,” which she contended would demonstrate that there was a genuine issue of fact as to whether Nytal talc contained asbestos. Sanders noted that both Jimmy Sanders’s testimony that Ny-tal talc contained asbestos and Dr. Abraham’s report ‘ stating that Nytal talc contained asbestos were in the record before Vanderbilt filed its summary-judgment motion. Additionally, Sanders cited the deposition of Dr. Rigler, the expert report of Dr. Rigler and Hatfield, the deposition testimony of Fitzgerald, and the report of Dr. Millette as all confirming that Nytal talc contained asbestos. Sanders observed that those additional pieces of evidence were not available at the time Vanderbilt filed its motion for a summary judgment because the depositions of her experts were not scheduled to be completed until May 31, 2013. Even so, Sanders noted, the experts’ opinions were available before the trial court entered its order on summary judgment, which found that “the undisputed evidence shows that the talc did not contain asbestos.” Based on the evidence in the record, Sanders argued, the trial-court should vacate its summary judgment in favor of Vanderbilt.
*53 On- August 19, 2013, Vanderbilt submitted its response to Sanders’s motion to vacate. In that response, Vanderbilt argued that Sanders
“knew the opinions of her experts, as .she disclosed their opinions on August 15, 2012, before Vanderbilt even filed its motion for summary judgment. [Sanders has] failed to submit any explanation, much less a reasonable one,, as to why she failed to submit an affidavit of any of her experts with their opinions about Vanderbilt’s talc.”
As to the deposition testimony of Jimmy Sanders, Vanderbilt contended that “any speculative testimony by Dansby Sanders’ coworkers that they believed NYTAL contained asbestos is insufficient to create a material issue of fact where there is no evidence to show that Dansby Sanders worked with Vanderbilt talc.” Thus, Vanderbilt returned to its original argument that Sanders had failed to demonstrate that Dansby had been exposed to a Vanderbilt product.
The trial court denied the motion to vacate without further explanation. In his capacity as administrator ad litem, Kruse appeals the trial court’s judgment.[5]

II. Standard of Review

' “In Pittman v. United Toll Systems, LLC, 882 So.2d 842 (Ala.2003), this Court set forth the standard of review applicable to a summary judgment: ’
“ ‘This Court’s review of a summary judgment is de novo.
“‘“In reviewing the disposition of a motion for summary judgment, ‘we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was ‘entitled to a judgment as a matter of law.’ Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c),. Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993) [overruled on other grounds, Bruce v. Cole, 854 So.2d 47 (Ala.2003)]; Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).” ’
“882 So.2d at 844 (quoting Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997)).”
Johnson v. Brunswick Riverview Club, Inc., 39 So.3d 132, 135 (Ala.2009).

III. Analysis

Kruse argues that the trial court erred in entering a summary judgment in favor of Vanderbilt on a ground not argued in Vanderbilt’s motion for a summary judgment. Kruse observes, correctly, that Vanderbilt’s written motion for a summary *54 judgment did not raise the issue whether Sanders-had presented any evidence indicating that Vanderbilt products contained asbestos. Instead, the summary-judgment motion argued that Sanders had failed to demonstrate that Dansby had been exposed to a Vanderbilt product during his employment with Mobile Paint. Accordingly, Sanders’s response to the motion addressed solely the issue of “product identification,” i.e., whether Dansby had ever been exposed to a Vanderbilt product.[6] Sanders’s response even noted that she expected Vanderbilt to file another summary-judgment motion at a later time challenging the assertiqn that its products contained asbestos.
Two weeks later at the hearing on the motion, Vanderbilt raised the issue of asbestos content, and its Counsel discussed solely that issue throughout the hearing. Sanders’s counsel responded by observing that she had experts who would testify as to the issue' of asbestos content but that the issue before the trial court for the present summary-judgment motion was whether Dansby had been exposed to a Vanderbilt product.. Sanders’s counsel’s argument to the trial court in the hearing reflected that. understanding. Nonetheless, and despite the directives of the trial court in its scheduling order as to the timing pf discovery and motions for summary judgment relating to the issue of product identification as opposed to its directives regarding the completion of discovery and filing of motions regarding other issues, the trial court entered a summary judgment for Vanderbilt solely on the basis of a purported lack of evidence in the record demonstrating that Vanderbilt’s products contained asbestos. Kruse contends that the trial court clearly erred by so concluding.
Vanderbilt responds that Kruse
“grasps at straws ... because R.T. Vanderbilt did not explicitly indicate that its talc was not asbestos-containing in its original summary judgment brief. This argument is meant to distract from the real issue, which is that [Sanders] failed to produce sufficient evidence to support a finding that Mr. Sanders was ‘directly exposed’ to an asbestos-containing product supplied by R.T. Vanderbilt.”
Vanderbilt’s brief, p. 10. Vanderbilt insists that it “did argue that Mr. Sanders was not exposed to an asbestos containing R.T. Vanderbilt product in its- original summary judgment motion.” Id. at 10-11. It then cites pages of its motion that contain language nearly identical to the passage in its brief quoted above, i.e., that Sanders failed to produce evidence indicating that “Mr. Sanders was ‘directly exposed’ to an asbestos-containing product supplied by R.T. Vanderbilt.” The bulk of the remainder of Vanderbilt’s brief on appeal discusses the evidence pertaining to Dansby’s exposure to Vanderbilt products at Mobile Paint.
In responding to Kruse’s argument, Vanderbilt performs a sort of sleight-of-hand by conflating two issues into one. Whether Dansby was exposed to a Vanderbilt product (product identification) and whether Vanderbilt talc contained asbestos are different issues. Consistent with the trial court’s scheduling order and the corresponding state of discovery at the time it filed its motion for a summary judgment, Vanderbilt clearly argued only the issue of product identification/exposure in that motion. Contrary to that scheduling order *55 and the state of discovery regarding issues other than product identification, and contrary to the content of its summary-judgment motion, Vanderbilt argued only the issue of asbestos content at the hearing on that motion. Before us, Vanderbilt argues as if the two issues are one and the same and, therefore, that Sanders had no reason to be caught unaware in the trial court. We disagree.
“‘When the basis of-a summary-judgment motion is a failure of the non-movant’s’ evidence, the movant’s burden ... is limited to informing the court of the basis of its motion — that is, the moving party must indicate where the nonmoving party’s case suffers an evidentiary failure.’ ” Farr v. Gulf Agency, 74 So.3d 393, 398 (Ala.2011) (quoting Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001)). As noted, Vanderbilt argued in its summary-judgment motion that Sanders failed to present sufficient evidence that Dansby had been exposed to a Vanderbilt product during his employment at Mobile Paint. It did not indicate that Sanders’s case suffered from a lack of evidence that Vanderbilt talc contained asbestos. Despite this, the trial court entered a summary judgment in favor of Vanderbilt on the latter basis.
“[A] defendant who moves for a summary judgment on the ground of ‘a failure of the [plaintiffs] evidence ... must indicate where the [plaintiffs] case suffers an evidentiary failure.’ Kennedy v. Western Sizzlin Corp., 857 So.2d 71, 78 (Ala.2003). If such a summary-judgment motion ‘does not inform the trial court (and the [plaintiff]) of a failure of the [plaintiffs] evidence on a fact or issue, no burden shifts to the [plaintiff] to present substantial evidence on that fact or issue. Therefore, summary judgment for a failure of proof not asserted by the motion for summary judgment is inappropriate.’ Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1068 n. 3 (Ala.2003) (citations omitted).
“Thus, ... a trial court should not grant a summary judgment, and an appellate court will not affirm one, on the basis of an absence of substantial evidence to support an essential element of a claim or affirmative defense unless the motion for a summary judgment has properly raised that absence of evidence and has thereby shifted to the nonmov-ing party the burden' of producing substantial supporting evidence.”
Hollis v. City of Brighton, 885 So.2d 135, 140 (Ala.2004). See also Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala.2004) (stating that “[s]ummary judgment cannot be entered against the non-moving party on the basis of a failure of that party’s proof unless the motion for summary judgment has challenged that failure of proof’). Based on the foregoing, it is clear that the trial court erred in entering a summary judgment in favor of Vanderbilt on the basis of a purported lack of record evidence that Vanderbilt products contained asbestos.
Furthermore, in her motion to vacate the judgment, Sanders subsequently presented substantial evidence that Ny-tal talc contained asbestos. Vanderbilt argues that that evidence came too late and that Kruse offers no reason why the evidence could not have been presented in response to its motion for a summary judgment. “[0]nce the trial court enters a summary judgment, ‘[a] post-judgment motion may not be used to belatedly submit evidence in opposition to a motion for a summary judgment.’ White v. Howie, 677 So.2d 752, 754 (Ala.Civ.App.1995).” Ex parte City of Montgomery, 758 So.2d 565, 568 (Ala.1999) (abrogated on other grounds).
*56 The obvious reason Sanders did not present the evidence earlier is that the summary-judgment motion did not indicate that asbestos content was an issue being challenged at that time. Moreover, in addition to the content of the summary-judgment motion itself, the trial court’s scheduling order provided that depositions of Sanders’s experts would not occur until after the deadline for filing “product identification” motions for a summary judgment by any of the defendants.
As Sanders’s counsel stated in the hearing on the summary-judgment motion, asbestos content of Vanderbilt products is an issue for expert testimony, but Sanders’s experts had yet to be deposed, in accordance with the trial court’s own scheduling order, and thus discovery on that issue had not been completed at the time Vanderbilt filed its summary-judgment motion.
Vanderbilt complains that Sanders could have submitted affidavits from her experts before the trial court ruled on Vanderbilt’s summary-judgment motion because Sanders knew what her experts would testify to when they submitted their expert-disclosure statement, which was before Vanderbilt filed its motion. But again, Vanderbilt’s argument ignores the fact that Sanders had no reason to believe that affidavits from her experts on the issue of asbestos content were necessary to rebut the summary-judgment motion. The fact that Sanders was put on notice of the issue at the summary-judgment hearing is of no consequence because “[tjhis Court has repeatedly recognized that ‘ “[t]he trial court can consider only that material before it at the time of submission of the motion” and that any material filed thereafter “comes too late.’”” Bean v. State Farm Fire & Cas. Co., 591 So.2d 17, 20 (Ala.1991) (quoting Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc., 512 So.2d 99, 101 (Ala.1987), quoting in turn Osborn v. Johns, 468 So.2d 103, 108 (Ala.1985)). Moreover, after the hearing Sanders still had no reason to believe that the trial court would enter a summary judgment on the issue of the asbestos content in Nytal talc, given that the trial court listened to Sanders’s counsel’s entire presentation at the hearing addressing the issue of Dansby’s exposure to Nytal talc and, as part of that presentation, counsel’s insistence that product identification/exposure was the only issue properly before the trial court.[7]
Even though the trial court’s reason for entering a summary judgment in favor of Vanderbilt was flawed, “we can affirm a summary judgment on any valid legal ground presented by the record, whether that ground was considered by, or even if it was rejected by, the trial court, unless due-process constraints require otherwise.” Wheeler v. George, 39 So.3d 1061, 1083 (Ala.2009). Vanderbilt clearly presented in its summary-judgment motion the argument that was contemplated by the trial court’s scheduling order, i.e., the argument that Sanders had failed to present substantial evidence that Dansby was exposed to Nytal supplied by Vanderbilt during his employment with Mobile Paint.
*57 In examining the' issue of Dansby’s exposure to Nytal, we note at the outset that Vanderbilt, in its motion for a summary judgment, and Sanders, in her response to the motion, argued for two different standards for establishing exposure based on the same case: Sheffield v. Owens-Corning Fiberglass Corp., 595 So.2d 443 (Ala.1992).[8] In its motion for a summary judgment, Vanderbilt cited Sheffield for the proposition that, “[t]o sustain an asbestos action, a plaintiff must at the very least show that he was exposed to an asbestos-containing product manufactured by the defendant.” Vanderbilt also cited Sheffield for its further contention that “[t]he plaintiff must produce sufficient evidence to support a finding that the plaintiff was ‘directly exposed’ to that defendant’s asbestos-containing products.”
Conversely, in her response to the motion for a summary judgment, Sanders argued that
“[a]ny assertion by [Vanderbilt] in this case that [Sanders] is required to show ... that Mr. Sanders worked directly with or in close proximity to an asbestos-containing product of the defendants which was a substantial factor in causing his asbestos-related injury fails in light of the Alabama Supreme Court’s findings in Sheffield.”
Instead, Sanders insisted, “[t]he Supreme Court of Alabama in Sheffield held that the plaintiff bears the burden of proof on the issue of causation and must,"at a minimum, demonstrate that the asbestos product manufactured by a specific manufacturer was present at the plaintiff’s job site.”
We question whether the standard Kruse asserts that Sheffield established— the presence of the asbestos-containing product at the plaintiff’s “job site” — means anything different than the standard Vanderbilt argues that Sheffield supplied — direct exposure to the asbestos-containing product. A standard other than direct exposure would not be logical, ’given that a plaintiff obviously, must establish that the product in question caused his or her injuries. Indeed, corroboration for that standard comes from what appears to be the majority rule for causation, used by most courts throughout the country in asbestos litigation: the “frequency-regularity-proximity” test propounded in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir.1986).[9] The Lohrmann court— applying Maryland law — stated that, to establish proximate causation, “the plaintiff must introduce evidence which allows the jury to reasonably conclude that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result.” 782 F.2d at 1162. The Lohrmann court concluded that this meant that, “[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended *58 period of time in proximity to where the plaintiff actually worked.” 782 F.2d at 1162-63.
Regardless, for purposes of this case we need not decide which of the two standards urged by the parties before us is the correct standard (or whether we should even understand the standard argued by Kruse to be really stating a different standard than the one argued by Vanderbilt). In this case, Sanders satisfied even the possibly more challenging standard urged by Vanderbilt.
First, Sanders produced substantial evidence that the particular asbestos-containing product at issue — Nytal talc — was supplied by Vanderbilt to Mobile Paint at its Conception plant and then at its Theodore plant. Vanderbilt’s own shipping records indicated that Nytal talc was supplied to Mobile Paint at the Conception plant in 1974 and 1975 and that it was shipped to the Theodore plant through at least the year 2000. Additionally, James Hays, vice president of Mobile Paint, testified that Vanderbilt was a “major source” of talc supply for Mobile Paint from 1962 until 2009, and he specifically stated that Nytal was the product supplied by Vanderbilt during that period. Further, Dansby’s coworker James Nord testified that Nytal-coded products were “very popular” at the Theodore plant and that code 343, Nytal 300, “was used a lot from the mid-'70’s to 2002 at Theodore.”
Second, Sanders also produced substantial evidence as to the extent of Dansby’s exposure to Nytal. Witnesses confirmed the presence and use of Nytal on a daily basis at both the Conception plant and then at the Theodore plant. Witnesses also testified to the dusty conditions created when pigments were added to the paint mixture. Witnesses testified that Dansby entered the area where Nytal was used multiple times per day for 37 years. In addition, at least one witness further testified that the filling room at the Theodore plant, where Dansby worked beginning in the mid-1970s, was located beneath the mixing room and that dust from the mixing area entered Dansby’s work area on a regular basis.
In sum, when the evidence is viewed, as it must be, in the light most favorable to Kruse, the summary judgment entered by the trial court cannot be sustained on mere product-identification grounds. A reasonable inference exists that Dansby was exposed to Nytal talc supplied by Vanderbilt during the period he was employed by Mobile Paint. Whether that exposure was a “substantial factor” in causing Dansby’s mesothelioma is a separate issue.

TV. Conclusion

Based on the foregoing, the trial court erred in entering a summary judgment in favor of Vanderbilt. The trial court entered its judgment on a basis not contemplated by its own scheduling order and, in fact, not presented in the motion for a summary judgment filed in keeping with that 5 order (and, in any event, Sanders subsequently presented substantial evidence contradicting that basis'for the summary judgment). Sanders also presented substantial evidence that Dansby was exposed to Nytal talc supplied by Vanderbilt during his employment at Mobile Paint, thus demonstrating.a genuine issue of fact as to the issue actually raised in the motion for a summary judgment. According-: ly, the judgment of the trial court is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
MOORE, C.J., and MAIN and BRYAN, JJ., concur.
BOLIN, J., concurs in the result.

. Jimmy Sanders testified that he did not work on the bull gang at the same time as Dansby because Jimmy Sanders 'had moved into the filling department by the time Dansby was hired by Mobile Paint. He stated, however, that the conditions would have been the same and that the same products continued to be unloaded for use at the Conception plant when Dansby worked on the bull gang.

. James Nord testified that he started working for Mobile Paint on the bull gang in early 1966, so he worked in that department a few months after Dansby had been promoted to another department.

. Pulling paint involved agitating tanks filled with paint and skimming partially solidified latex from the top of the tank, a process that, according'to the workers, takes approximately 10 minutes.

. The trial court later amended the scheduling order such that Sanders’s experts were to be deposed by May 31, 2013.

. Kruse informs this Court in his appellate brief that Vanderbilt is now the only remaining defendant in this action. Vanderbilt does not dispute that assertion.

. This Court has stated that "[bjecause 'product identification is one element of causation,' ... the 'threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer.’ ” Sheffield v. Owens-Corning Fiberglass Corp., 595 So.2d 443, 450 (Ala.1992) (citations omitted).

. Vanderbilt also objects that some of the evidence Sanders presented in her motion to vacate the judgment was not in the form of admissible evidence. See Tanksley v. ProSoft Automation, Inc., 982 So.2d 1046, 1053 (Ala.2007) (stating that "[djocuments submitted in support of or in opposition to a summary-judgment motion are generally required to be certified or otherwise authenticated; if they are not, they constitute inadmissible hearsay and are not considered on summary judgment”). At a minimum, this is not true of the deposition testimony from Jimmy Sanders, Dr. Rigler, and Sean Fitzgerald, which in itself was substantial evidence demonstrating a genuine issue of fact as to whether Nytal contained asbestos.

. The fact that the parties’ arguments are based on Sheffield is not surprising, given that Sheffield is the only case from this Court that has substantively addressed the issue of what a plaintiff is required to show in order to establish that he or she was exposed to a defendant’s asbestos product. Nearly all the cases in this Court that have involved asbestos exposure have addressed the issue of the accrual of the cause of action, which is not an issue in this appeal. See Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008), and the cases cited therein.

. “Courts in every circuit but the D.C. Circuit, and the First, Second, and Fifth Circuits have adopted the Lohrmann test. In addition, Michigan, Massachusetts, New Jersey, Illinois, Pennsylvania, Maryland, Nebraska, and Oklahoma have adopted the test.” Slaughter v. Southern Talc Co., 949 F.2d 167, 171 n. 3 (5th Cir.1991).